


**DLA Piper** LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
www.dlapiper.com

Matthew A. Holian
matt.holian@dlapiper.com
**T** 617.406.6009
**F** 617.406.6109

September 26, 2017

The Honorable Claire C. Cecchi
United Stated District Court, District of New Jersey
50 Walnut Street, Courtroom MLK 5B
Newark, NJ 07101

Re: **Defendants' Letter Brief in Support of Disputed ESI Protocol Provisions**
*In Re: Proton-Pump Inhibitor Products Liability Litigation (No. II)*
Case No. 2:17-md-02789-CCC-MF

Dear Judge Cecchi:

Defendants respectfully submit the following letter brief in support of their proposed protocol to govern the production of documents and electronically stored information ("ESI") in this MDL. Defendants have reached agreement with Plaintiffs on all but three provisions:

**(1) Inclusion of Definition of Custodial Files (Paragraph A.5):** First, the parties disagree with respect to whether the ESI protocol should include definitions of Defendants' Custodial Files. The ESI Order was the subject of extensive negotiations and agreement between the parties, including provisions relating to the scope of Defendants' respective Custodial File productions. Defendants are concerned that Plaintiffs wish to re-open this issue in attempt to expand discovery or manufacture discovery disputes, which will needlessly protract the litigation.

**(2) Format of Production for Certain File Types (Paragraph B.2):** Second, Plaintiffs want the Court to require *all* Defendants to produce – on a blanket basis – certain types of documents that do not require redaction (Word documents, PowerPoints, and PDFs; collectively, "the Disputed File Types") in native format. Defendants other than AstraZeneca instead propose to produce images of such documents using Tagged Image File Format ("TIFF") together with extracted text and metadata (commonly referred to as "TIFF-plus" format), a format that makes the documents reasonably usable. Such Defendants also will honor reasonable requests by Plaintiffs for production of specific documents among the Disputed File Types in native format.

Defendants' proposal is consistent with Rule 34, which requires that a party produce documents in a "reasonably usable" format. Plaintiffs' proposal, by contrast, would make this Court the first of which Defendants are aware to conclude that the TIFF-plus format for these file types is not "reasonably usable" under Rule 34 and would invite needless disputes about the authenticity of documents and whether parties receiving the documents have honored their confidentiality obligations under the protective order.






**(3) Production of Redacted Documents in Color vs. Black & White (Paragraph B.1.c):** Third, Plaintiffs want the Court to require all Defendants to produce certain file types – including PowerPoints, Excel spreadsheets, Word files containing tracked changes and/or comments, and promotional materials – in color. Defendants are all willing to honor reasonable requests for specific documents in color, but should not have to bear the expense of producing all such files in color. As a result, Defendants propose that the Court limit color productions to specific documents reasonably requested by Plaintiffs, and require the parties to meet and confer with respect to whether Plaintiffs should pay for the additional cost of any color production.

Below Defendants explain why the Court should adopt their ESI proposals, which are reflected (along with Plaintiffs' competing proposals) in the proposed order attached hereto.[1]

## I. The Court Should Include the Parties' Previously-Agreed Definitions of "Custodial Files" in the ESI Protocol.

Until now, the format of production for specified file types was the only item of dispute between Plaintiffs and certain Defendants. The parties agreed to all other terms in the Protocol after extensive negotiation. With the exception of production format, the ESI Protocol was stipulated to by the parties, submitted to numerous courts for entry, and in fact entered in multiple cases, including by Your Honor in this Court for all cases filed against AstraZeneca.[2] As such, Defendants have been and continue to identify, collect and review documents for production pursuant to the stipulated terms of the ESI Protocol.

While the Plaintiffs' Steering Committee initially proposed that the ESI Order entered by Your Honor be updated to apply to all Defendants, Plaintiffs now abandon this position and seek to rewrite certain provisions of the Protocol, including removal of Defendants' Custodial File definitions. Conversely, despite there being provisions in the Order that Defendants would like to change, in the spirit of good faith and mindful not to waste the considerable time and effort previously expended by the parties to narrow contested issues, the only item Defendants continue to dispute is production format. Plaintiffs' about-face on previously agreed terms appears to be a

[1] On May 17, 2017, this Court entered an Order Regarding the Format of Production of Hardcopy Documents and Electronically Stored Information, to which Plaintiffs and AstraZeneca stipulated. *Various Plaintiffs, et al. v. AstraZeneca Pharmaceuticals, LP, et al.* Case 2.16-cv-05143-CCC-MF (D.I. 35). AstraZeneca has spent hundreds of thousands of dollars identifying, collecting, reviewing and producing documents pursuant to this Order. AstraZeneca continues to operate under this Order, but should the Court wish to have one ESI Order apply to all parties, AstraZeneca supports co-Defendants' version of the Order, and does not agree to the changes proposed by Plaintiffs.

[2] *See* n.1, *infra*; Order Regarding the Format of Production of Hardcopy Documents and Electronically Stored Information, *Irma Coleman, et al. v. AstraZeneca Pharmaceuticals, LP, et al.*, Case No. 17-cv-130-DRH (S.D. Ill, Herndon, J.) (D.I. 60). The parties also submitted proposed ESI orders in the consolidated cases before Judge Pratter in the Eastern District of Pennsylvania, *In Re Proton Pump Inhibitors Products Liability Litigation*, Civil Action No. 17-1817, and by Plaintiff and AstraZeneca to Magistrate Judge James in the District of Kansas in *Koon v. AstraZeneca Pharmaceuticals, LP, et al.*, Case No. 2:16-cv-02605-JWL-TJJ (D.I. 54).





calculated effort to expand the scope of Defendants' discovery and set the stage for potential discovery disputes.

Since the earliest meet and confer discussions, Plaintiffs have repeatedly stated that they expect Defendants' document productions in this litigation will be – at least in part – Custodian based. In order to avoid future litigation on this point, and in accordance with the principles of Federal Rules 26(f) and 34(a) and (b), Defendants included their respective Custodial File definitions at the outset of negotiations on the ESI Order. Until now, these definitions have been included in *every* ESI Order submitted to the courts as an uncontested provision. Absent definition, "custodial file" is a nebulous, undefined term without meaning. It can be interpreted to encompass different sources to different parties. In fact, as evidenced by the language in the parties' ESI Orders to date – which is consistent with Defendants' proposed language here – each Defendant's Custodial File definition is unique based on how employees typically store data under each Defendant's respective electronic systems and protocols. These definitions clearly articulate the sources allocated to employees that are included in each Defendant's Custodial production. Removal of this language makes the scope of Defendants' Custodial productions vague and ambiguous. Indeed, without a defined scope, responding to requests to produce "Custodial Files" becomes a moving target under Plaintiffs' anticipated Rule 34 discovery requests, and only invites discovery disputes and expensive, unnecessary motion practice on account of what Plaintiffs may later contend *should* be included as part of a Defendant's Custodial production versus what *is* included pursuant to the language offered by Defendants nearly half a year ago. *See* Fed. R. Civ. P. 34(b)(1)(a) (noting that a request for production "must describe with ***reasonable particularity each item or category of items*** to be inspected") (emphasis added).

Nevertheless, despite never challenging the Defendants' definitions in prior submissions, Plaintiffs now complain that they should first be entitled to discovery about the Defendants' systems before agreeing to a definition of "Custodial File." However, agreeing to define "Custodial File" now so the Defendants can produce in response to a specific, not vague and ambiguous, request, does not preclude Plaintiffs from serving additional Rule 34 requests seeking other documents or data sources at a later date. But their request to scrap the Custodial File definitions and allow them to protract discovery and re-open an issue that was never previously disputed in the parties' joint ESI submissions in four jurisdictions, and under which Defendants have been operating and collecting documents for several months, is prejudicial and should be denied.

In addition to being inconsistent with the parties' negotiations and conduct to date, Plaintiffs' attempt to remove Defendants' Custodial File definitions also is unsupported by law. As a general premise, a producing party is in the best position to determine issues surrounding its production of ESI to ensure discovery is reasonable and proportionate. This is a well-established principle recognized by both the Sedona Conference and case law, including by this Court. As acknowledged by the Sedona Conference, producing parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for producing their own electronically stored information, including defining the scope of collection of such information. The Sedona





Conference, *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* at 38 (2d ed. 2007), *available at* https://thesedonaconference.org/download-pub/81 ("*The Sedona Principles*"). Indeed, Defendants are in the best position to identify the sources and methods of collection from their Custodians. Each Defendant's infrastructure and protocols are unique, with specific sources allocated to employees that are subject to collection once an employee is identified as a Custodian in a litigation. These sources are clearly detailed in the Defendants' respective Custodial File definitions, and relevant, non-privileged documents from these sources as well as Non-Custodial Data Sources (as defined in the ESI Order) will be produced in response to Plaintiffs' discovery requests.

In *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418 (D.N.J. 2009), this Court noted that "the Sedona Principles wisely state that it is, in fact, the producing party who is the best position to determine the method by which they will collect documents. The producing party responding to a document request has the best knowledge as to how documents have been preserved and maintained." *Id.* at 427; *see also id.* at 424 (noting that The Sedona Conference commentaries "are the leading authorities on electronic document retrieval and production"); *Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *14 (E.D. Pa. 2016) ("Indeed, it is fundamental that it is the producing party who is the best position to determine the method by which they will collect and review documents."). Plaintiffs cannot force Defendants to redefine their Custodial File definitions when Defendants are in the best position to define the scope of production, and furthermore have been relying on these definitions for the last several months.

Moreover, Plaintiffs have had these Custodial File definitions for almost half a year and never once flagged them as a contested provision in any ESI Order submissions to the courts. Plaintiffs should not now be permitted to abandon previously agreed upon terms that have already shaped methods of collection because it is their whim to do so. *Ford Motor Co.*, *supra*, is also instructive on this point. The *Ford Motor* Court found that Plaintiffs' several month delay in challenging Defendant's format of production resulted in waiver of the challenge. Here, Defendants have been relying on the Custodial File definitions for the identification and collection of documents. Plaintiffs' attempt to remove the definitions at this stage is nothing more than an attempt to protract discovery.

Defendants ask that the Court deny Plaintiffs' request to remove Defendants' Custodial File definitions as Plaintiffs should not be permitted to re-open discussion on this topic in effort to dictate or dispute the scope of Defendants' Custodial Files. Defendants are in the best position to define these terms, and the parties previously agreed to inclusion of this language in numerous ESI Order submissions.

## II. The Court Should Allow Defendants to Produce Documents in TIFF-Plus Format.

Federal Rule of Civil Procedure 34 allows a producing party to decide whether to produce ESI in a form "in which it is ordinarily maintained *or* in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii) (emphasis added). The Rule does not grant the receiving party a right to dictate to the producing party how it must produce documents. Many courts have





recognized that TIFF-plus qualifies as a "reasonably usable" format under Rule 34. Moreover, Plaintiffs here have *agreed* that Defendants can produce other file types and redacted documents in TIFF-plus, undercutting any argument that TIFF-plus is not a reasonably usable format.

By contrast, native format can impair the parties' ability to authenticate documents and undermine the protection afforded to confidential documents, thereby imposing undue burdens and costs on the producing party. Some producing parties may be willing to produce in native format, such that ESI protocols in other litigations call for native production (including the one entered by this Court in the AstraZeneca-only cases pending before the Judicial Panel on Multidistrict Litigation ("JPML") transferred all PPI cases to this Court).[3] That does not mean, however, that Rule 34 bears such a requirement. Indeed, the undersigned Defendants are not aware of *any* federal court that has ordered production of the Disputed File Types in native format based on a finding that TIFF-plus is not "reasonably usable" under the current version of Rule 34.

In support of their position, Plaintiffs may cite the ESI protocol imposed by Judge David Herndon of the Southern District of Illinois in a handful of cases before the JPML formed this MDL. Notably, that court did not have all the current defendants before it and did not issue any opinion accompanying the ESI protocol in which it found that a TIFF-plus format is not "reasonably usable" under Rule 34, nor did Plaintiffs there cite any federal court that has reached that unprecedented conclusion. Furthermore, the production of documents by some of the undersigned Defendants under that court's order was limited and should not be construed as precedent by this Court. Rather, in evaluating this issue for the first time in this litigation, this Court should reject Plaintiffs' invitation to be the first federal court to find that TIFF-plus format is not "reasonably usable" for the Disputed File Types under Rule 34. The Court instead should allow Defendants to produce the Disputed File Types in TIFF-plus format and honor reasonable, specific requests for native production of select documents.

**A. TIFF-Plus Constitutes A "Reasonably Usable" Format And Has Been Endorsed By Many Courts.**

Rule 34 allows a party producing documents to do so in a form "in which it is ordinarily maintained *or* in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii) (emphasis added). Rule 34 does not prescribe any particular form of production and, "[a]lthough each boasts advantages and demerits, both [n]ative and TIFF are reasonably usable formats" under that Rule. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 228 (S.D. Cal. 2015).

---

[3] Plaintiffs agree that all Defendants may produce redacted documents in TIFF-plus (though some Defendants may choose native format instead), and Defendants have agreed to produce certain other file types (Excel, SAS files, and audio/video files), if any will be produced, in native format where the documents do not require redaction. *See* Proposed ESI Protocol ¶ B.2. In the ESI Protocol this Court previously entered in the AstraZeneca only cases, the AstraZeneca Defendants agreed to produce unredacted versions of the Disputed File Types in native format. Although AstraZeneca has agreed to produce the Disputed File Types in native format, the AstraZeneca Defendants agree that such a determination should be made by the producing party rather than the receiving party.





TIFF-plus satisfies Rule 34's "reasonably usable" standard, because the receiving party will obtain: (1) the image of the document as if it were printed; (2) extracted text of the document for purposes of searching and organizing documents; and (3) the metadata that would accompany the document if one were reviewing it using the producing party's software. For that reason, many courts have endorsed TIFF-plus production. In addition, even though it is not required, Defendants have agreed to provide the Disputed File Types in native format upon reasonable, particular requests from Plaintiffs – even where Defendants already have provided the documents in TIFF-plus format – providing an extra degree of utility beyond what is required by Rule 34. As a result, the Defendants' proposal best optimizes the discovery needs of all parties with regard to the Disputed File Types.

**1. A TIFF-Plus Production of the Disputed File Types Will Give the Plaintiffs Substantially More Information than Mere Images.**

When producing documents using TIFF images, a producing party starts by converting documents into images that match how the documents would appear if they were printed from a computer using the producing party's software. During that conversion process, the producing party can ensure that certain features of a document – such as hidden text, tracked changes, comments, or other annotations, which may not necessarily appear when a document is printed – are always visible on the image, so that nothing of substance in the document is lost during the conversion. Defendants also can use automated processes to stamp every page of each document image with a Bates number and any confidentiality designation, which will make it much easier for the parties to identify documents (including their source) and ensure that confidential documents are handled according to the protective order in this litigation. And because the images are static (*i.e.*, they are not changed merely by being opened by the receiving party), there are almost never disputes about their authenticity, because it is very difficult to alter the images inadvertently or deliberately.

But Defendants who wish to produce the Disputed File Types in TIFF-plus here will not just be providing Plaintiffs with images of the relevant documents. Instead, the parties have agreed that a producing party *also* will provide: (1) extracted or Optical Character Recognition ("OCR") text (*i.e.*, the full text of a document in electronic form), so that the receiving party can search all the documents in a database for words and phrases; (2) where available, metadata regarding the document (such as who authored it, when it was created, when it was last modified, and more than 30 other pieces of information that will accompany each document), which the receiving party also can use to search and organize the documents; and (3) a "load" file that will enable the receiving party to review the documents using common software programs. *See* Proposed ESI Protocol, Attachment A ¶¶ A.1-A.3, A.14. These additional features – beyond just the document images – mean that the files are fully searchable, contain all relevant information, and are easily reviewed and analyzed using modern tools. That is why practitioners refer to this type of production as "TIFF-plus." And, Plaintiffs here have *agreed* that Defendants can produce other file types and redacted documents in TIFF-plus, undercutting any argument that TIFF-plus is not a reasonably usable format. Plaintiffs' argument that a TIFF-plus production prejudices their ability to search and review files is without merit.





**2. Many Courts Have Recognized that TIFF-Plus Format Is "Reasonably Usable" under Rule 34.**

The additional functionality of a TIFF-plus production – as compared to TIFF images alone – renders the TIFF-plus format "reasonably usable" under Rule 34. As one court noted, "even if native files are requested, it is sufficient [under Rule 34] to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata." *Aguilar v. ICE*, 255 F.R.D. 350, 356-57 (S.D.N.Y. 2008); *see also Bridgepoint Educ., Inc.*, 305 F.R.D. at 238. On that basis, courts regularly deny requests that a producing party must produce all documents in native format and instead deem production in TIFF or TIFF-plus format to be permissible under Rule 34.[4] In fact, Defendants are not aware of *any* federal court that has ever determined that TIFF-plus format for the Disputed File Types is not "reasonably usable" under Rule 34; apparently, Plaintiffs want this Court to be the first.

The TIFF-plus approach also has been endorsed by The Sedona Conference, which has noted, "In current practice, many parties, local rules and courts have endorsed the use of image production formats, principally the Tagged Image File Format ('TIFF') and Adobe Portable Document Format ('PDF') formats." *The Sedona Principles* at 62; *see also Aguilar*, 255 F.R.D. at 356-57; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 673 F. App'x 141, 145 fn. 6 (3d Cir. 2016) (acknowledging that TIFF is "[a] widely used and supported graphic file format"). Recognizing that TIFF-plus format is "reasonably usable" under Rule 34, many courts have endorsed the use of TIFF-plus format in their model ESI orders as well.[5]

**3. Defendants Will Accommodate Reasonable Requests for Native Production of the Disputed File Types, Even Those Previously Produced in TIFF-Plus.**

Finally, even though a TIFF-plus production would satisfy Defendants' obligations under Rule 34 with respect to the Disputed File Types, here Defendants are willing to go beyond what the Rule requires and produce particular documents of those types to Plaintiffs in native format

---

[4] *See, e.g.*, *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 690 (D. Kan. 2014); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 560 (N.D. Ill. 2008); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88, 91 (D. Conn. 2005).

[5] *See, e.g.*, Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), Ad Hoc Committee for Electronic Discovery, D. Del., ¶ 5(c) (2011), *available at* www.ded.uscourts.gov/sites/default/files/Chambers/SLR/Misc/EDiscov.pdf; Model Order Governing Electronic Discovery, E.D. Pa., ¶ 5 (2017); [Model] Order Regarding E-Discovery in Patent Cases, E.D. Tex., ¶ 5A (Mar. 14, 2014), *available at* www.txed.uscourts.gov/sites/default/files/forms/E-Discovery_Patent_Order.pdf; Rules Governing Elec. Discovery, S.D.N.Y. (Hon. Colleen McMahon), ¶ 5 (Mar. 14, 2014), *available at* www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=262; U.S. Court of Appeals for the Seventh Circuit, Principles Relating To The Discovery of Electronically Stored Information: Phase Three Interim Report (May 2012-May 2013), *available at* http://www.discoverypilot.com/sites/default/files/phase_three_interim_report.pdf.





upon reasonable request. Indeed, Rule 34 states that a party producing ESI "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii); *see* The Sedona Principles at 22, 66; *Chapman v. General Bd. of Pension & Health Benefits of the United Methodist Church,* No. 09 C 3474, 2010 WL 2679961, at *18 (N.D. Ill. July 6, 2010).

In an effort to accommodate Plaintiffs, however, Defendants have agreed that they will entertain reasonable, specific requests for the production of natives of the Disputed File Types. *See* Proposed ESI Protocol ¶ B.1.a. Further, depending on the volume of Plaintiffs' requests, Defendants estimate that they typically will be able to produce native versions of the Disputed File Types within approximately one week. Thus, Defendants' proposal, which goes well beyond Defendants' obligation under the Federal Rules, should suffice to give the Plaintiffs the benefits of native production for documents when they believe it is critical, without imposing on Defendants the disadvantages associated with native production.

**B. Plaintiffs' Request For Native Production Of The Disputed File Types Is Burdensome Because It Risks Collateral Disputes About Authentication And Inadequately Protects The Confidentiality Of Defendants' Documents.**

As explained above, this Court need not decide whether TIFF-plus or native is a superior format for production, because the relevant question under Rule 34 is simply whether TIFF-plus format is reasonably usable (which it is). Different producing parties may have different views about whether native production is superior for certain file types, based on different cost structures and other factors, and Rule 34 affords them the ability to produce in whatever format they choose, so long as it is reasonably usable. But the Defendants here who do not wish to produce the Disputed File Types in native format have good reason to oppose the obligation that documents be produced in native format. Defendants describe below some of those concerns, even though the relative advantages and disadvantages of native format versus TIFF-plus are not the relevant questions facing this Court under Rule 34.

In particular, native production of the Disputed File Types would burden Defendants by: (1) risking collateral disputes about the authenticity of documents, including whether they had been altered inadvertently; and (2) inadequately protecting the confidentiality of Defendants' documents, which is of particular concern here given the number of Defendants, who are all competitors in the field of PPIs.[6]

**1. Native Production of the Disputed File Types Increases the Risk of Collateral Disputes about the Authenticity of Documents.**

First, a critical problem with a native production is that Defendants will not be able to stamp each page of the documents with Bates numbers. Without a Bates stamp, the Court, parties, and witnesses will be deprived of a traditional and easy way to quickly ascertain the

[6] While Defendant AstraZeneca has agreed to produce the Disputed File Types in native format, it recognizes some of these potential limitations and by joining this brief does not waive its ability to raise with the Court any problems that may arise in connection with the native production.





origin of a document, to be sure that the printed version is the same that was produced, and to identify the document for the record. *See The Sedona Principles* at 62. While comparing TIFF images can be done quickly by a layperson, an electronic comparison of native documents may require a technical expert to perform that task, potentially creating delays in trial or at depositions. *See id.* at 3 (noting that ESI "can be modified in numerous ways that are sometimes difficult to detect without computer forensic techniques"). What is usually a simple process of authenticating documents may in some instances require testimony to support the completeness or accuracy of a particular document. Further, many documents will not have any page numbers, further complicating their use. These burdens will be significant in litigation with millions of pages of documents and thousands of exhibits.

Moreover, in native format, documents and their accompanying metadata can be altered inadvertently merely by opening them, and it can be very difficult to tell that changes were made. *See id.* at 3 (noting that "the act of merely accessing or moving electronic data can change it"); *id.* at 62 (noting that it is "harder (but not impossible) to alter the data inadvertently or deliberately" with TIFF images than in native). And once a document is altered in even the smallest way – by the addition of a single space or a punctuation mark, or even merely by opening the document – then the "hash value" (a unique identifier for each document) will change too, making it impossible to trace the origin of the document to the producing party and to confirm that the document has remained as it was produced. As one court recognized in rejecting the approach sought by Plaintiffs here, "[g]iven the sheer volume of information flowing from defendants to plaintiffs, the information should be conveyed as numbered images so that no inadvertent alterations are made, or more likely, no accusations of alteration can be made, and so that the information can be easily identified." *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. at 91; *see also Bridgepoint Educ., Inc.*, 305 F.R.D. at 244.

While Plaintiffs have proposed that the parties be required to append slip sheets to the native documents when printed and implicitly represent that the documents have not been altered, it will be easy for documents to be separated from their slip sheets, which could result in disputes about the authenticity of documents at depositions, thereby introducing unnecessary delay while the parties validate documents rather than relying on Bates stamps. Plaintiffs' proposals do not address the lack of page numbers and other logistical challenges with native format, all of which will burden the parties unnecessarily. These burdens will add costs to all parties, because lawyers for the producing parties will have to spend potentially substantial amounts of time being far more vigilant about documents that were produced in native format – *e.g.*, verifying that the documents are authentic and were not modified, tracing the origin of documents, and figuring out the best way to reference specific pages of documents without a Bates number – than they would be if the documents were produced in their traditional TIFF-plus format. That vigilance by the producing party's lawyers will increase costs for the receiving parties as well, because their depositions and other discovery will be rendered less efficient by interruptions necessitated by the producing party's lawyers. Accordingly, Plaintiffs' argument that a TIFF-plus production is less efficient than native is unsupported by the realities of litigation.






**2. Native Production of the Disputed File Types Threatens the Confidentiality of Defendants' Documents.**

Just as the parties will not be able to stamp a Bates number on the pages of a native document, the parties also will not be able to stamp confidentiality markers on native format documents. An essential reason for stamping "CONFIDENTIAL" on documents is that if they are disseminated, intentionally or inadvertently, the viewer can readily see that the document is confidential and subject to a protective order. *See In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. at 91. On the other hand, a person looking at a document produced in native form cannot tell that it is confidential, even if that information is embedded in metadata or a filename, or otherwise agreed to by the parties.

In a TIFF-plus format, a computer can automatically stamp the images of documents without the need for a person to open and modify every document. Defendants can perform no similar automated process with a native production. And, if such an effort were undertaken manually – to open each native document and type into each page a new footer or header that contains Bates numbering information and a confidentiality marker – that process likely would consume thousands of hours to perform, thereby increasing the cost of producing documents, and would alter the hash value of the document, thereby changing the native document.

These confidentiality concerns are particularly important here, where there are multiple Defendants who are competitors in the area of PPIs, and where it may not be immediately obvious from the face of a native document whether it has been designated as confidential by the producing party. Similarly, some of the potential witnesses (whether fact or expert witnesses) may have worked for more than one of the Defendants on more than one PPI. The commercial harm to a Defendant should its confidential information be revealed inappropriately to a competitor could be significant.

Plaintiffs' proposal to require the parties to append a slip sheet to native format documents with the confidentiality designation and to stamp a confidentiality legend on a native document that is printed in hard copy is insufficient to address these serious concerns, because it will be easy for entire documents (or even individual pages) to be separated from their slip sheets, for a party to neglect to stamp the confidentiality legend on each page of a document printed in hard copy, or for parties to send or use the documents in native format where no slip sheet or visual confidentiality stamp is used at all. And this concern is not just limited to lawyers representing competing Defendants seeing documents; if a document is provided to an expert or a witness without a confidentiality stamp (even inadvertently), that person (unaware of its confidential nature) may transmit the document to someone who is not entitled to see it, or post it on a web site, making it widely and publicly available and threatening the security of Defendants' trade secrets and other competitive information. Defendants should not be forced to take the risk when a suitable alternative – production in TIFF-plus format, with documents stamped as confidential by the producing party rather than relying on the receiving party – provides Plaintiffs all the information they need.





**C. The Imposition Of Native Format In An ESI Protocol In A Handful Of PPI Cases In Another Court Should Not Lead This Court To Be The First To Find That TIFF-Plus Format Is Not "Reasonably Usable."**

In the parties' discussions about the ESI protocol, Plaintiffs repeatedly have referenced the ESI protocol imposed in a small number of PPI cases (involving only some of the Defendants before this Court) which previously were pending in the Southern District of Illinois, in which the court ordered the Defendants in those cases to produce the Disputed File Types in native format. That decision is not persuasive for several reasons.

First, that court did not find that TIFF-plus format is not reasonably usable under Rule 34. In the parties' very cursory submissions before the entry of that protocol – necessitated by the Plaintiffs' insistence that the parties submit their competing proposals approximately one week after the initial status conference – Plaintiffs did not cite any federal precedent reaching that conclusion. Nor did the court issue a written order other than the ESI protocol itself; rather, the court's rationale consisted solely of a one-line email to counsel. That one judge overseeing a handful of cases imposed native format – with very limited briefing, no written reasoning, and an apparently uniform body of case law to the contrary – should not persuade this Court to follow suit.

Second, the scope of native format production of the Disputed File Types in those cases by Defendants who would not otherwise choose to produce in that format was limited. Because that production was limited – and did not involve most of the undersigned Defendants – this Court should give that ESI protocol little or no weight when evaluating this issue. More important, as discussed above, are the considerations imposed by Rule 34, specifically whether a production format is "reasonably usable," the risk of collateral disputes about authentication, and the inadequate protection of defendants' confidential documents afforded by a native production.

Thus, consistent with Rule 34, Defendants request that the Court find that TIFF-plus format is "reasonably usable" and on that basis adopt Defendants' proposal allowing them to produce unredacted Word documents, PowerPoints, and PDFs in that format. In the spirit of compromise and to address any outstanding concerns, Defendants also will honor reasonable, specific requests by Plaintiffs for production of the Disputed File Types in native format.

**III. The Court Should Not Require Defendants to Produce Documents in Color.**

Plaintiffs' burdensome request that Defendants produce all "PowerPoints, Excel spreadsheets, Word files containing tracked changes and/or comments and promotional materials" in color falls outside the bounds of reasonableness contemplated by Rule 34. Indeed, a committee formed by the Seventh Circuit to "develop, implement, evaluate, and improve pretrial litigation procedures" recommended that documents should be produced in "Black and





White unless color is necessary to understand the meaning."[7] In addition, producing in black and white is in accord with multiple federal court opinions. *See, e.g.*, *Clouser v. Golden Gate Nat'l Senior Care, LLC*, 2016 WL 4223755, at *6 (W.D. Pa. Aug. 9, 2016); *Dizdar v. State Farm Lloyds*, 2015 WL 12780640, at *10, *12 (S.D. Tex. Jan. 21, 2015) (granting defendant's request to produce documents in black and white); *Victor v. Varano*, 2012 WL 1514845, at *7 (M.D. Pa. May 1, 2012) ("[W]e find no basis to compel Defendants to produce color photographs when they have already made black-and-white copies available.").

Defendants propose a more balanced approach whereby they will produce documents in black and white in the first instance but, upon a showing of good cause by Plaintiffs, will reproduce particular documents in color. Defendants understand that there may be documents that should be produced in color. *See, e.g.*, *Robinson-Reeder v. Am. Council on Educ.*, 262 F.R.D. 41, 45 (D.D.C. 2009) (court required defendant to produce original because it placed color of ink at issue). As such, Defendants' proposal contemplates that after Plaintiffs request production of a particular document in color, the parties will meet and confer regarding both the request and whether cost-shifting is appropriate. A determination of whether a document needs to be reproduced in color should be readily apparent. Accordingly, both parties' concerns would be allayed by Defendants' proposal.

Considering the vast majority of documents to be produced by Defendants will be easily understood regardless of whether they are in color or black and white, Plaintiffs' proposal would force Defendants to incur substantial, unnecessary costs. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 717 (3d Cir. 2005), *as amended* (Nov. 10, 2005) ("obviously color copies are more expensive than black and white ones"). This approach is patently unfair and wholly inefficient. Defendants' proposal, on the other hand, provides a reasonable solution in which Defendants are not burdened with unnecessary costs while Plaintiffs still can obtain documents in color when color is necessary to understand their meaning.

*/s/ Arthur E. Brown*
Arthur E. Brown
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-8000
F: (212) 836-8689
arthur.brown@apks.com

---

[7] *See* U.S. Court of Appeals for the Seventh Circuit, Principles Relating to the Discovery of Electronically Stored Information: Phase Three Interim Report (May 2012-May 2013) at 1, 63, *available at* https://www.discoverypilot.com/sites/default/files/phase_three_interim_report.pdf.





_/s/ William Hoffman_
William Hoffman
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 2001
T: (202) 942-5000
F: (202) 942-5999
william.hoffman@apks.com

*Attorneys for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP*

_/s/ Amy K. Fisher_
Amy K. Fisher
Katherine Althoff
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
T: (317) 236-2100
F: (317) 592-5443
amy.fisher@icemiller.com
katherine.althoff@icemiller.com

_/s/ Gregory Hindy_
Gregory Hindy
Debra M. Perry
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07101-0652
T: (973) 622-4444
F: (973) 624-7070
ghindy@mccarter.com
dperry@mccarter.com






*/s/ Makenzie Windfelder*
Makenzie Windfelder
James J. Freebery
MCCARTER & ENGLISH LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
T: (302) 984-6300
F: (302) 984-6399
mwindfelder@mccarter.com
jfreebery@mccarter.com

*Attorneys for Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and McKesson Corporation*

*/s/ Craig A. Thompson*
Craig A. Thompson
Jason C. Rose
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
Phone: (410) 244-7400
Facsimile: (410) 244-7742
cathompson@venable.com
jcrose@venable.com

*/s/ Sherry A. Knutson*
Sherry A. Knutson
James R. M. Hemmings
TUCKER ELLIS LLP
223 South Wacker Drive, Suite 6950
Chicago, IL 60606
Phone: (312) 624-6300
Facsimile: (312) 624-6309
sherry.knutson@tuckerellis.com
james.hemmings@tuckerellis.com





*/s/ Beth S. Rose*
Beth S. Rose
Vincent Lodato
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Phone: (973) 643-7000
Facsimile: (973) 643-6500
brose@sillscummis.com
vlodato@sillscummis.com

*Attorneys for Defendants*
*Takeda Pharmaceutical Company Limited,*
*Takeda Pharmaceuticals U.S.A., Inc.,*
*Takeda Pharmaceuticals America, Inc.,*
*Takeda Development Center Americas, Inc.,*
*Takeda California, Inc. and*
*Takeda Pharmaceuticals International, Inc.*

*/s/ Loren H. Brown*
Loren H. Brown
Cara D. Edwards
Lucas P. Przymusinski
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
loren.brown@dlapiper.com
cara.edwards@dlapiper.com
lucas.przymusinski@dlapiper.com

*/s/ Matthew A. Holian*
Matthew A. Holian
Katie W. Insogna
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Tel: (617) 406-6000
Fax: (617) 406-6100
matt.holian@dlapiper.com
katie.insogna@dlapiper.com





*/s/ Stephen C. Matthews*
Stephen C. Matthews
PORZIO, BROMBERG & NEWMAN, P.C.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962
Tel: (973) 889-4212
Fax: (973) 538-5146
scmatthews@pbnlaw.com

*Attorneys for Defendants Pfizer Inc., Wyeth LLC, Wyeth Pharmaceuticals Inc., and Wyeth-Ayerst Laboratories*

*/s/ K. C. Green*
K. C. Green
Jeffrey F. Peck
Gina M. Saelinger
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 698-5000
Facsimile: (513) 698-5001
kcgreen@ulmer.com
jpeck@ulmer.com
gsaelinger@ulmer.com

*Attorneys for The Procter & Gamble Company and The Procter & Gamble Manufacturing Company*