# DOUGLAS & LONDON, P.C.
Attorneys At Law
59 Maiden Lane, 6th Floor
New York, N.Y. 10038
(212) 566-7500
FAX: (212) 566-7501
www.DouglasAndLondon.com

Gary J. Douglas
Michael A. London*
Stephanie O'Connor*
Randolph D. Janis
_____

Virginia E. Anello^
Rebecca G. Newman*
Kristin D. Padden◊
Robin J. Bond*
Lara J. Say*ⁿ
Alicia P. Ellsayed
Michael D. Sharp[F]

*Also admitted in NJ
^Also admitted in LA & MA
◊Admitted in NJ only
ⁿAlso admitted in NC
[F]Of Counsel

**VIA ECF**
Honorable Claire C. Cecchi
United States District Court for the District of New Jersey
Martin Luther King, Jr. Bldg. & Courthouse
50 Walnut Street
Newark, NJ 07101

February 12, 2019

> *Re: Proton-Pump Inhibitor Products Liability Litigation*
> *2:17-md-2789 (CCC)(MF) (MDL 2789)*

Dear Judge Cecchi:

The PSC respectfully submits this letter in furtherance of the discussion with the Court and counsel for AstraZeneca at the January 11, 2019 Case Management Conference, regarding the issue of contacting former employees of Astrazeneca who reside overseas and who are not represented by counsel.

As the Court may recall, there was some disagreement between AstraZeneca's counsel and the PSC as to whether the PSC was prohibited from contacting these potential witnesses in those instances when AstraZeneca's counsel was unable to locate the former employee or the former employee refused to communicate with AstraZeneca's counsel and refuses to appear for a deposition. The Court asked the PSC to conduct some research into the issue, in hope of determining whether these former employees who are not represented by counsel and who

Hon. Claire C. Cecchi
February 12, 2019
Page 2

reside overseas can be contacted by the PSC or its designees. As set forth in more detail below, the answer to this question is yes.

## I. *Ex Parte* Communication with Former Employees in Europe

*Question Presented*: Can counsel for plaintiffs interview former employees of the defendants who reside in Switzerland, Sweden and the United Kingdom for the purposes of investigating this case?

*Answer*:

Yes, the PSC may contact former employees of AstraZenca living in Europe, however, for those former employees living in Switzerland, there are some limited restrictions on what can be discussed during such communications. For former employees living in Sweden and the United Kingdom, the PSC is permitted to contact former employees who are not represented without any restrictions. For former employees living in Switzerland, the PSC must be cognizant of the Swiss "blocking statute," which prohibits collecting evidence in Switzerland for court proceedings abroad without lawful authority, which is reserved for Swiss officials. To this end, such contact in Switzerland should be limited to requests for information rather than the "collection" of evidence for use in court proceedings. Thus, even in Switzerland, there is nothing to prevent the PSC from contacting a former employee to inquire if they are willing to voluntarily speak with the PSC or give testimony in the United States.[1]

### A. General Principles Governing International Discovery

The United States Supreme Court rejected the "extreme position that the Hague Evidence Convention 'provides the exclusive and mandatory procedures for obtaining documents and information located within the territory of a foreign signatory.'" *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 529 (1987). The Hague Convention "does not modify the law of any contracting state, require any contracting state to use the Convention procedures, either in requesting evidence or in responding to such requests, or compel any contracting state to change its own evidence-gathering procedures." *Id.*, 534. Furthermore, a foreign nation's "blocking statute" precluding disclosure of evidence does not deprive a U.S. court of power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the foreign blocking statute. *Id.*, 543.

Blocking statutes consist of "legislation that is specifically designed to prevent domestic individuals or corporations from having to comply with U.S. discovery production requests." Kristen A. Knapp, *Enforcement of U.S. Electronic Discovery Law Against Foreign Companies:*

---

[1] It is the law that a Swiss citizen can voluntarily give evidence outside of Switzerland, as Article 271 prohibits only the "collection of evidence" in Swiss territory. A Swiss citizen can be contacted to determine whether he or she would be willing to come to New Jersey for a deposition because the Swiss citizen "is free to decide whether or not to collaborate and will not suffer any legal detriment by agreeing or refusing to reply to the information request." *Blocking provisions: pitfalls to collecting evidence in Switzerland*, Practical Law UK Articles 7-521-0202, August 2012.

Hon. Claire C. Cecchi
February 12, 2019
Page 3

*Should U.S. Courts Give Effect to the EU Data Protection Directive?*, 10 RICH. J. GLOBAL L. & BUS.. 111, 122 (2010). Such statutes traditionally prohibit "'the disclosure, copying, inspection, or removal of documents located in the territory of the enacting state in compliance with orders of foreign authorities,' and all such statutes 'appear to carry some penal sanction.'" *Id.* (quoting RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442 n. 4 (1987)). Even statutes directly on point may be overcome if the comity factors favor discovery, however. *Gucci Am., Inc. v. Curveal Fashion*, No. 09 CIV. 8458 RJS/THK, 2010 WL 808639, at *8 (S.D.N.Y. Mar. 8, 2010) (ordering production of documents protected by Malaysian banking laws, where the "documents are vital to the litigation, the requests are direct and specific, the documents are not easily obtained through alternative means, the interest of the United States outweighs that of Malaysia under the circumstances, and the likelihood that [third party bank] would face civil or criminal penalties is speculative").

Typically, foreign interests are implicated when there is court ordered discovery, and the majority of decisions interpreting *Aerospatiale* involve challenges to discovery procedures otherwise permitted by the Federal Rules of Civil Procedure, rather than *ex parte* communication with potential witnesses. Generally, it is the right of a party to conduct out-of-court interviews with an adverse party's witnesses, and such "interviews may be conducted confidentially, without the presence of opposing counsel or reporter, whenever the person interviewed is willing to proceed in this manner." *Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 44 (2d Cir. 1975) (holding restrictions on interviewing adverse witnesses impaired constitutional right to effective assistance of counsel). However, as discussed below, Switzerland's blocking statute may be implicated even where contact with a witness is outside the formal discovery process.

### B. Blocking Statutes

#### 1. Switzerland

Switzerland's blocking statute is potentially triggered by *ex parte* communications with former employees of a party to litigation. Specifically, when contact with a former employee constitutes official collection of evidence, the blocking statute may be implicated, but a mere request for information does not trigger the blocking statute. Furthermore, a former employee from Switzerland who gives testimony in the U.S. would not violate the blocking statute because the blocking statute has a Swiss-territorial requirement and it is the law that a Swiss citizen can voluntarily give evidence outside of Switzerland, as Article 271 prohibits only the "collection of evidence" in Swiss territory

"In Switzerland, Article 271 of the Swiss Criminal Code (Article 271) prevents an 'official act' from being performed on behalf of a foreign authority on Swiss soil. This can have the effect of blocking the collection of evidence located in Switzerland, which is intended for use in foreign proceedings." *Blocking provisions: pitfalls to collecting evidence in Switzerland*, Practical Law UK Articles 7-521-0202, August 2012. There are four elements to a violation of Article 271 "(1) The act falls within the competence of a public authority;" "(2) The act is made in favour of a foreign state;" "(3) The act is made without authorization;" and "(4) The act occurs on Swiss territory." *Id.*

Hon. Claire C. Cecchi
February 12, 2019
Page 4

Although *ex parte* communications are not technically "made in favour of a foreign state," one commentator noted it is sufficient to satisfy the requirements of Article 271 if the act can "be used before or by the authority." This appears to include being used "before" a court when considering evidence gathered from *ex parte* interviews, based on the above-cited Swiss Supreme Court ruling. "[T]he collection of documents in Switzerland in view of preparing a future trial could at least lead to an infringement of Article 271 by indirect intention…." *Id.*

By contrast, it appears that:

> [A] collection of evidence prohibited by Article 271 can be distinguished from a mere request for information addressed to a non-litigant person based in Switzerland to obtain information or confirmation in relation to the position of a party. These types of situations could include:
>
>> Contact with a third party to determine whether [the third party] can be included on a witness list.
>>
>> Contact initiated with individuals located in Switzerland to get further details on a dispute.
>
> In these circumstances the addressee of the request is free to decide whether or not to collaborate and will not suffer any legal detriment by agreeing or refusing to reply to the information request.

*Id.* "As long as the addressee is free to collaborate without any impact on its legal situation, the request should not be deemed an official act falling within the scope of Article 271, provided the request relates to a mere request for information and not to collection of proper evidence."

Therefore, Swiss former employees are not in danger of violating the blocking statute by providing information to a requesting attorney, as long as the information they provide would not be an act that falls within the competence of a public authority or made by them for the purposes of use in foreign proceedings. Further, any testimony they provide in the United States would not meet the territorial requirements of the blocking act and, as a result, would not be subject to these limitations.

Given all of the above, the PSC may contact a former employee in Switzerland to request his or her presence at a deposition in the United States and/or gather basic information from that former employee in Switzerland so long as the attorneys are not gathering such information as evidence to use in the litigation.

### 2. Sweden

"Sweden has not adopted any additional blocking statutes in its national legislation." Sweden – Central Authority (Art. 2) and practical information, Hague Conference on International Private Law ("HCCH").[2]

### 3. United Kingdom

"In the U.K., although there are no blanket provisions prohibiting discovery, the U.K. Secretary of State has the authority under the Protection of Trading Interests Act 1980 (c. 11), a U.K. blocking statute, to give instructions precluding discovery in certain instances if it conflicts with the U.K.'s trading interests or infringes upon U.K. sovereignty." *The Impact on U.S. Discovery of EU Data Protection and Discovery Blocking Statutes*, Hughes Hubbard, Jan 2013. However, the blocking power are specific to affirmative intervention by the UK Secretary of State. Protection of the Trading Interests Act 1980 Chapter 11.

There is no relevant case law interpreting the statute, but it is very unlikely to apply here. First, the statute references only discovery. Plaintiffs would not be seeking formal discovery, if contacting these former employees who will not cooperate with defense counsel. And even if plaintiffs were seeking formal discovery, it is unlikely that the defendants could convince the U.K. Secretary of State that discovery in this case presents a conflict with U.K. trading interests or infringes on U.K. sovereignty.

## C. Data Protection Laws

Neither the EU's General Data Protection Regulation of 2018 ("GDPR") nor the Swiss Federal Data Protection Act ("FDPA")[3] prohibit counsel from contacting and interviewing witnesses.

## II. U.S. Rules Governing *Ex Parte* Communication with Former Employees

In determining the permissibility of contacts with former employees of a defendant, and with no apparent foreign prohibition, the Court should apply New Jersey's Ethical Rules (which are the ABA model rules as revised by the NJ Supreme Court). Thus, so long as a former employee as not in the litigation control group and not represented by counsel, there is no ethical prohibition in contacting that former employee.[4]

---

[2] Available at https://www.hcch.net/en/states/authorities/details3/?aid=522. The conclusion by the HCCH that Sweden has no blocking statutes in its national legislation is based on information "provided by the relevant State authorities or was obtained from the replies to the 2008 and/or 2013 Evidence Convention Questionnaires." *Id.*

[3] The Swiss FDPA is currently undergoing revisions to better conform with the GDPR.

[4] ***Former*** agents and ***employees*** who were members of the litigation control group shall presumptively be deemed to be represented in the matter by the organization's lawyer but may at any time disavow said representation. N.J. Rules Prof'l Conduct R. 1.13(a) (emphasis added).

Hon. Claire C. Cecchi
February 12, 2019
Page 6

New Jersey ethics rules would be applied to a federal court located in New Jersey. "The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." N.J.D.C. Civ. Rule 103.1(a).

ABA Rule 8.5 was adopted and became effective in New Jersey in 2004 and reads: "the rules of professional conduct to be applied shall be: (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise." N.J. Rules Prof'l Conduct R. 8.5(b). Accordingly, under the ABA and New Jersey's Professional Conduct Rules, the law to be applied in a Federal Court situated in New Jersey is the New Jersey Rules of Professional Conduct.

"Nothing in the Rules prohibits *ex parte* communications with a former employee who was not within the litigation control group and who is not otherwise represented by counsel." *Michaels v. Woodland*, 988 F. Supp. 468, 472 (D.N.J. 1997).

Under New Jersey Rules of Professional Conduct, no ethical hurdles prohibit an attorney from contacting a former employee of an adverse party where that former employee is not a member of the adverse party's litigation control group and is not represented.

**Conclusion:**

In sum, where defense counsel has represented that they are unable to locate a former employee or that individual refuses to cooperate with defense counsel in scheduling a deposition, there is no prohibition on the PSC contacting that potential witness in Sweden or the United Kingdom, and only limited restrictions on how we may contact such individuals in Switzerland. Thus, in accordance with New Jersey's ethical rules, the PSC intends to begin reaching out to former employees of Astrazeneca who reside in these three foreign countries to discuss deposition scheduling and any other matters that are permitted within the scope of the law, where AstraZeneca's counsel has indicated he does not represent the witness, he cannot locate the witness, or where the witness refuses to cooperate with defense counsel in scheduling depositions.

The PSC intends to begin these communication efforts on Thursday, February 14, 2019.

**Hon. Claire C. Cecchi**
**February 12, 2019**
**Page 7**

Respectfully submitted,

/s/ Stephanie O'Connor
Stephanie O'Connor
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, 6th Floor
New York, NY 10038
(212) 566-7500
(212) 566-7501 (fax)
soconnor@douglasandlondon.com
*Plaintiffs' Co-Lead Counsel*


/s/ Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
(212) 584-0700
(212) 584-0799 (fax)
cseeger@seegerweiss.com
*Plaintiffs' Co-Lead Counsel*


cc: All Counsel of Record (Via ECF)