```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
 2                     Civil No. 2:17-md-2789-CCC

 3
     IN RE PROTON-PUMP INHIBITOR    :   TRANSCRIPT OF PROCEEDINGS
 4   PRODUCTS LIABILITY LITIGATION  :      - Status Conference -
     (No. II)                       :
 5   - - - - - - - - - - - - - - - -x

 6

 7                                          Newark, New Jersey
                                             October 11, 2019
 8

 9   B E F O R E:

10                  THE HONORABLE CLAIRE C. CECCHI,
                       UNITED STATES DISTRICT JUDGE
11

12

13   Pursuant to Section 753 Title 28 United States Code, the
     following transcript is certified to be an accurate record as
14   taken stenographically in the above entitled proceedings.

15

16   S/WALTER J. PERELLI

17

18   WALTER J. PERELLI, CCR, RM, CRR
     Official Court Repoter
19   U.S. District Court

20

21

22

23

24

25
```

```
 1     A P P E A R A N C E S:

 2        ATTORNEYS FOR PLAINTIFFS:

 3        SEEGER WEISS LLP
          BY:  CHRISTOPHER A. SEEGER, ESQ.
 4             JEFFREY GRAND, ESQ.

 5        DOUGLAS & LONDON, P.C.
          BY:  MICHAEL A. LONDON, ESQ.
 6             STEPHANIE O'CONNOR, ESQ.

 7        AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
          BY:  JENNIFER M. HOEKSTRA, ESQ.
 8
          WEITZ & LUXENBERG, PC
 9        BY:  PAUL J. PENNOCK, ESQ.
               JONATHAN M. SEDGH, ESQ.
10
          WILENTZ, GOLDMAN & SPITZER, P.A.
11        BY:  DANIEL R. LAPINSKI, ESQ.

12

13                 ATTORNEYS FOR DEFENDANTS:

14        ARNOLD & PORTER KAYE SCHOLER LLP
          BY:  ARTHUR E. BROWN, ESQ.
15             MATTHEW J. DOUGLAS, ESQ.
               - and -
16        McCARTER & ENGLISH, LLP
          BY:  GREGORY L. HINDY, ESQ.
17        Attorneys for Defendant AstraZeneca

18        ICE MILLER LLP
          BY:  AMY K. FISHER, ESQ.
19        Attorneys for Defendant AstraZeneca and Merck

20        REED SMITH LLP
          BY:  STEPHEN J. McCONNELL, ESQ.
21             JESSE ASH, ESQ.
          Attorneys for Defendants GSK and Novartis Consumer Health
22

23        SILLS, CUMMIS & GROSS, PC
          BY:  CHARLES J. FALLETTA, ESQ.
24        Attorneys for Defendant Novartis Entities

25
```

WALTER J. PERELLI, CCR, CRR, OFFICIAL COURT REPORTER, NEWARK, NJ

```
 1          ULMER & BERNE LLP
            BY:  K.C. GREEN, ESQ.
 2               GINA M. SAELINGER, ESQ.
            Attorneys for Defendant Procter & Gamble Entities
 3
            DLA PIPER
 4          BY:  LOREN H. BROWN, ESQ.
                 MATTHEW A. HOLIAN, ESQ.
 5               STEPHEN C. MATTHEWS, ESQ.
            Attorneys for Pfizer and Wyeth
 6
            VENABLE LLP
 7          BY:  CRAIG A. THOMPSON, ESQ.
                 - and -
 8          TUCKER ELLIS LLP
            BY:  SHERRY A. KNUTSON, ESQ.
 9               - and -
            SILLS, CUMMIS & GROSS, PC
10          BY:  BETH A. ROSE, ESQ.
                 - and -
11          Attorneys for Takeda and Abbott

12
            GREENBERG TRAURIG LLP
13          BY:  MARISSA BANEZ, ESQ.
            Attorneys for Salix and Santarus
14

15     ALSO IN ATTENDANCE

16          ELZUFON AUSTIN & MONDELL, P.A.
            BY:  JOHN A. ELZUFON, ESQ.
17          Special Master (Delaware)

18

19

20

21

22

23

24

25


        WALTER J. PERELLI, CCR, CRR, OFFICIAL COURT REPORTER, NEWARK, NJ
```

```
 1                THE COURT:  We're here on PPI, 17-md-17-2789.
 2                Let's have appearances.
 3                MR. SEEGER:  Good afternoon, your Honor.  Chris Seeger
 4     for Plaintiffs.
 5                MS. O'CONNOR:  Good afternoon, Judge.  Stephanie
 6     O'Connor for the Plaintiffs.
 7                MR. GRAND:  Good afternoon, your Honor.  Jeffrey Grand
 8     for the Plaintiffs.
 9                MR. PENNOCK:  Paul Pennock for the Plaintiffs, your
10     Honor.
11                MR. LONDON:  Good afternoon, your Honor.  Michael
12     London for the Plaintiffs.
13                MR. SEDGH:  Good afternoon, your Honor.  Jonathan
14     Sedgh for the Plaintiffs.
15                MS. LIPINSKI:  Good afternoon, your Honor.  Daniel
16     Lapinski for the Plaintiffs.
17                MS. HOEKSTRA:  Jennifer Hoekstra for Plaintiffs.  Good
18     afternoon, your Honor.
19                THE COURT:  All right.
20                MR. BROWN:  Arthur Brown for AstraZeneca.
21                MR. HINDY:  Greg Hindy, McCarter & English, for
22     AstraZeneca.
23                MR. DOUGLAS:  Good afternoon, your Honor.  Matthew
24     Douglas for AstraZeneca.
25                MS. FISHER:  Good afternoon, your Honor.  Amy Fisher
```

1     from Ice Miller for AstraZeneca and Merck.
2             MR. ASH:  Good afternoon, your Honor.  Jesse Ash for
3     GSK.
4             MR. McCONNELL:  Good afternoon, your Honor.  Steve
5     McConnell on behalf of GSK.
6             MR. GREEN:  K.C. Green for the Proctor & Gamble
7     entities.
8             MR. L. BROWN:  Hello, your Honor.  Loren Brown for
9     Pfizer.
10            MR. HOLIAN:  Matthew Holian for Pfizer.
11            MR. MATTHEWS:  Stephen Matthews for Pfizer.
12            MS. KNUTSON:  Sherry Knutson for Takeda and Abbott.
13            MR. THOMPSON:  Craig Thompson for Takeda and Abbott.
14            THE COURT:  Thank you so much.
15            Anyone else?
16            MR. ELZUFON:  Good afternoon.  John Elzufon, Delaware
17    Special Master.  As usual, it's always good to be here.
18            THE COURT:  Thank you.  Good to have you.
19            Anyone else?
20            MS. SAELINGER:  Gina Saelinger from Ulmer & Berne for
21    Proctor & Gamble.
22            MS. BANEZ: Marissa Benez for Defendants Salix and
23    Santarus.
24            MR. FELETTA:  Charles Feletta on behalf of the
25    Novartis Defendants, from Sills Cummis.

1           THE COURT:  Anyone else?
2           Anyone on the telephone?
3           THE DEPUTY CLERK:  They can't hear you, Judge.
4           Counsel, do we have anyone on the line?  Hello.
5           Counsel?
6           THE COURT:  Hello.  Anyone on the phone line?
7           We'll just wait.
8           (The Court and the Deputy Clerk confer off the
9   record.)
10          THE COURT:  In any event, I'd like to bring us up to
11  date.
12          We've had some conferences off record today which I
13  think were very productive.  I'd like to go through each of the
14  subject matters that we've gone through.
15          The first issue I would like to discuss is the
16  bellwether plan.  And we have been addressing the bellwether
17  plan, the proposed bellwether plan for I believe 15 months at
18  this point, and we have discussed this matter over eight status
19  conferences.  And I'm pleased today that we made what I believe
20  to be significant progress in that regard.  I would like to be
21  able to go through the framework we have for the proposed plan.
22          And I think we're going to have AstraZeneca put that
23  onto the record, please, Mr. Brown.
24          MR. BROWN:  Thank you, your Honor.
25          THE COURT:  Thank you.

```
 1              MR. BROWN:  The program we discussed today and the
 2     purpose of this discussion is to lay the elements out --
 3              THE COURT:  Yes.
 4              MR. BROWN:  -- on the record.
 5              There have been some preliminary discussions with
 6     clients, but I know we'll hear on this later today, we'll have
 7     the official word next week.  The construct --
 8              THE COURT:  Before you go any further, each individual
 9     party is going to call and speak to my Deputy or to my Law
10     Clerk, Brian, by close of business on Wednesday and let us know
11     if the plan is acceptable to you.  Thank you.
12              MR. BROWN:  And with that, the components, as I
13     understand it, are that from the cases to be eligible there
14     would need to be Stage 1 substantially complete as the CMO
15     defines those terms as to all Defendants as of May 31st, 2019.
16     My understanding, that's approximately 1250 cases.
17              From that group, a random sample of 200 cases will be
18     generated with the Plaintiffs able to select an additional five
19     picks and the Defendants able to pick an additional five cases,
20     for a total pool I believe of 210 cases.
21              From the 210 cases that are substantially complete
22     Stage 1 as to all Defendants, each side would pick 16 cases and
23     each side would have 6 strikes.  The result would be a
24     bellwether pool of 20 total cases.
25              The proposal would include a lexicon waiver for all
```

1    parties, Plaintiffs and Defendants, of a first trial which
2    would be a non Jersey trial; a second trial, which would be a
3    New Jersey trial; and a waiver for trials 3 through 6, and the
4    Court will make a determination on those cases that should be
5    tried.
6            The one issue is the replenishment procedure which is
7    still under discussion.  The Plaintiffs, as I understand it --
8    and Chris can confirm this -- is that a Defendant's pick is
9    dismissed as part of the bellwether pool.  The Defendants would
10   be able to supplement or replace that case.  If the Defendants'
11   position that some of this -- if work is ongoing in these
12   cases, it was our request that we be able to get an additional
13   strike for any case dismissed.  The Court gave us some comfort
14   and will give us some guidance on this that it's your hope that
15   cases wouldn't be dismissed in that manner.  But as its stands
16   right now, the replenishment procedure would be Defendants get
17   to add a case if the Plaintiffs dismiss one of their picks.
18            THE COURT:  Yes.  And I'm in agreement that I
19   certainly hope that we won't be in a situation where we're
20   going through the entire list of cases and seeking their
21   dismissal.  So I understand your position.  At the same time, I
22   think that Plaintiffs had an apt suggestion for trying to
23   resolve this in terms of the Defendants' pick going into the
24   place of the dismissed case.
25            Let me ask Plaintiffs:  Is that indeed the suggestion?

```
 1              MR. SEEGER:  Yes, your Honor.  Obviously there are
 2   circumstances that can come up along the way that if we think
 3   needs the Court's attention, we bring it up.  But generally,
 4   yes, that's the proposal.
 5              THE COURT:  And I'm hopeful that we avoid the
 6   difficulty that we're anticipating certainly, but I think the
 7   procedure should be able to protect that and protect the record
 8   here.
 9              All right.  Yes.
10              MR. GRAND:  I spoke with Mr. Brown before we went on
11   the record.  The Plaintiffs do want to see the list of the sort
12   of 15 -- approximately 1500 cases so we can verify.  Because
13   there's typically some of this agreement between parties about
14   what's substantial and complete, and we just want to make sure
15   that our records jibe.
16              MR. BROWN:  Your Honor, I think Mr. Grand was
17   referring to 1250 cases.
18              MR. GRAND:  Yes.
19              MR. BROWN:  And that is the number that we see that
20   are substantially complete Stage 1 that all Defendants, May
21   31st, we have agreed we'll try to put together that list.
22   There may some disagreement.  We may need to bring issues back
23   to the Court.
24              THE COURT:  And that's fine, I'm happy to go through
25   it if there are any issues.  But I think you all can take a
```

1    look at the list, make sure that's the list.  If there are any
2    additions or subtractions, obviously you can speak to one
3    another.  If there's something significant, you can give me a
4    call and I'd be happy to get on the phone with you.
5             With that statement made of what the proposal is, is
6    everyone clear or does anyone have any questions?  Because I
7    want to make sure that when you go back to your clients you
8    understand what we're addressing.  Everyone good?
9             Come forward to the microphone.  You can say your
10   name, who your client is and what your statement is.
11            MS. BANEZ:  Marissa Banez on behalf of Salix and
12   Santarus.
13            In the back we had some discussions regarding the
14   status of my client.  And I would request that Mr. Seeger come
15   and state for the record what he had said behind closed doors.
16            MR. SEEGER:  Why don't you say it and I'll agree to
17   it.  Because I'm not sure --
18            MS. BANEZ:  Please.
19            MR. SEEGER:  What are you talking about?
20            MS. BANEZ:  Okay.  What he said is --
21            MR. SEEGER:  I say a lot.
22            (Laughter.)
23            MS. BANEZ:  -- that my clients would not be part of
24   the bellwether trial.
25            MR. SEEGER:  Oh, yes.  We don't have any intention of

 1     picking her client in the first --
 2              MS. BANEZ:  Thank you.
 3              THE COURT:  But in terms of anything that we have as
 4     far as the framework for the bellwether trials, every
 5     defendant, every single defendant is going to be going back to
 6     their clients to present the plan to them and then to contact
 7     us.  And again, I reiterate, by next Wednesday close of
 8     business, you're going to call us and just leave a quick
 9     message with Jacquie, my Deputy, or Brian, my Law Clerk, and
10     let them know what your client's position is.
11              And since I've spoken to you all and I've talked to
12     you at length about this, I'm hopeful we have a plan in place.
13     I recognize that you have to get final approval on these
14     issues, but I'm hopeful that we are headed in the right
15     direction and that ultimately we have full and final and formal
16     agreement to the plan as it's been detailed today.  So I'll
17     wait to hear from you.
18              MR. BROWN:  And, your Honor, as a follow-on to the
19     conceptual bellwether program which I just described on the
20     record, there's a related issue we talked about and one that
21     hasn't been addressed, which is the schedule.
22              THE COURT:  Yes, go ahead.
23              MR. BROWN:  The schedule is a very important issue for
24     Defendants.  We do not want to be rushed through what is
25     probably the most important part of this case in the bellwether

1    program if we do, in fact, reach an agreement next Wednesday.
2    I've taken on the task of trying to come up with a new
3    schedule, which I'll do in the next couple of weeks, and be
4    prepared to discuss it at the next conference.  I'll confer
5    with co-Defendants and I'm happy to confer with Mr. Seeger on
6    this.  But that's going to be the next issue, because the
7    Defendants need ample time to be able to work up the bellwether
8    cases and not be rushed through a process that is --
9              THE COURT:  I understand, and I'm ready to be
10   flexible.  I understand that.
11             So what I think you can do is you can take up the last
12   plan that we had worked up prior to the issue of selecting and
13   determining the method for selecting bellwethers.  You can do
14   an overlay onto that in terms of bringing it up to date, and
15   then you can talk to Plaintiffs about it, you can talk to the
16   remaining Defendants about it, present it to me, and I think we
17   can go through it.
18             MR. BROWN:  That makes sense.
19             THE COURT:  Okay, great.  Thank you.
20             When do you want submit that by?  Do you want to have
21   a date for that?
22             MR. BROWN:  I haven't had a chance to speak to the
23   co-Defendants, but I think we'll be prepared to submit
24   something in advance of the next conference and so we can
25   discuss that.  These issues are inextricably linked in some

1  ways.  So I trust the Court's advice that we won't be rushed.
2  But I think we can discuss it, submit it a week before the next
3  conference and discuss it at the conference.
4          MR. SEEGER:  Your Honor, I like the idea to at least
5  get it in before the conference so your Honor has time to weigh
6  in if there are disputes at the conference.  Now that the
7  bellwether thing has been put aside, I think we can move --
8          THE COURT:  I think we're moving forward.  I'm
9  crossing my fingers.
10         The next issue, I just want to touch briefly on the
11 issue of a single deposition that we had discussed off record.
12 If someone wants to place what we discussed off record on right
13 now, that would be helpful.
14         MR. DOUGLAS:  Thank you, your Honor.  Matthew Douglas
15 on behalf of AstraZeneca.
16         As we discussed in the back, the AstraZeneca employee
17 Ula Helgren has a significant medical condition that will
18 require substantial accommodation, including breaks which may
19 be more frequent and longer than normal, time limits on any
20 particular day on the deposition, and significantly shorter
21 days most likely, but some of this is going to have to play out
22 realtime depending on how she does.  Because as the information
23 shows that we discussed with the Court -- it's personal
24 information, I'm not going to go into details on the record --
25         THE COURT:  That's fine, that's fine.

1          MR. DOUGLAS:  -- but there are significant
2   limitations.  And the Plaintiffs have agreed to make those
3   accommodations in order for the deposition to go forward on
4   October 25th.
5          THE COURT:  Very well.  And I think that that should
6   be fine to go forward.  They understand the deponent's
7   limitations, they'll be mindful of those limitations.  But
8   since the deponent is in Sweden and there will be another
9   deposition taking place, I think it makes sense to continue
10  with the depositions.  Hopefully they'll be completed.
11         Anything from the Plaintiffs on that?
12         MS. O'CONNOR:  No, your Honor.  You said it quite
13  well.  Thank you.
14         THE COURT:  Thank you very much.  All right.
15         MR. DOUGLAS:  Thank you, your Honor.
16         THE COURT:  Let's move on to motions to dismiss.
17         MR. HINDY:  Good afternoon, your Honor.
18         THE COURT:  Mr. Hindy.
19         MR. HINDY:  Greg Hindy on behalf of AstraZeneca.
20         As you know, we've been talking about dismissing, or
21  the process for dismissing cases that were on the Tolling
22  Agreement.  There are two buckets we talked about.  There are
23  609 that I think all parties agree are ripe for dismissal and
24  we had proposed dismissing without prejudice.  I think the
25  Court didn't agree with that.  So what we ended up doing is

1    agreeing to discuss an order to show cause process that we will
2    meet-and-confer with Plaintiffs' counsel on the 609 that's due
3    on October 18th --
4              THE COURT:  Yes.
5              MR. HINDY:  -- and then with respect to the 4956
6    cases, to do the same type of order to show cause process, and
7    that order to show cause will be due a week later, on October
8    25th.
9              THE COURT:  That sounds exactly right, according to my
10   notes.
11             Anything from the Plaintiffs on that?
12             MR. GRAND:  No, your Honor.
13             MR. LONDON:  Michael London, your Honor.
14             I believe only that we would submit the proposed
15   orders to show cause to the Court that day.  The responses to
16   the orders to show cause are not due on the 18th and the 25th.
17             THE COURT:  That's correct.  You're going to
18   meet-and-confer and submit a proposed order to show cause, one
19   on the 18th and one the next week on I guess the 24th.  Right?
20             MR. HINDY:  The 25th.
21             THE COURT:  The 25th, I'm sorry.
22             MR. LONDON:  Yes.
23             THE COURT:  And then that's all you're going to do
24   according to that schedule.
25             MR. LONDON:  Yes.  Thank you.

WALTER J. PERELLI, CCR, CRR, OFFICIAL COURT REPORTER, NEWARK, NJ

```
 1                THE COURT:  All right.  Anything additional?
 2                MR. BROWN:  Nothing from AstraZeneca.
 3                THE COURT:  Excellent.  Anything, any Defendants?
 4           Any issue issues?  No?
 5           Anything from the Plaintiffs?
 6                MR. SEEGER:  No, your Honor.
 7                MS. O'CONNOR:  No.
 8                THE COURT:  No?  All right.
 9           Well, I want to thank everyone for their patience
10     through this entire process, and particularly I want to thank
11     you for your good faith in working through the issues that we
12     had in front of us.  I think we made a tremendously amount of
13     progress today, as I said, and I'm very hopeful we'll be able
14     to move beyond this point.  And I'm certainly available to
15     speak with anyone if there are any issues that arise.
16                MR. SEEGER:  Yes.  Could we have the date for the next
17     conference?
18                THE COURT:  We do have a date.  The date is November
19     20th, at 1 o'clock.
20           Is that date still okay?
21                MR. BROWN:  Yes, it's still is okay.
22                THE COURT:  I think we have dates out into the future
23     as well.  We have another one for December still, December
24     17th, as well.  We also have December 17th, at 11.
25           All right.  With that, everyone, have a great weekend.
```

WALTER J. PERELLI, CCR, CRR, OFFICIAL COURT REPORTER, NEWARK, NJ

1     It's a long weekend.  Enjoy.  You've earned it.  Take care.
2              MS. FISHER:  Thank you, Judge.
3              THE DEPUTY CLERK:  All rise.
4              (Conclusion of proceedings.)
5                              ooOoo
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

WALTER J. PERELLI, CCR, CRR, OFFICIAL COURT REPORTER, NEWARK, NJ