NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION <br><br> **This Document Relates to:** <br><br> **ALL CASES LISTED ON EXHIBIT A OF CASE MANAGEMENT ORDER NO. 64** | 2:17-MD-2789 (CCC) (LDW) <br> (MDL 2789) <br> and all member and related cases <br><br> OPINION |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court upon Case Management Order No. 64 ("CMO 64"), which ordered counsel for certain plaintiffs to show cause why their cases should not be dismissed as legal nullities due to the plaintiffs having been deceased before the date of their complaints. *See* ECF No. 713; *see also id.* Ex. A (identifying the cases subject to CMO 64). The Plaintiffs' Steering Committee ("PSC") filed an omnibus brief in response (*see* ECF No. 777 ("PSC Br.")), and Defendants filed omnibus replies on the individual plaintiffs' dockets (*see, e.g.,* Civil Action No. 2:17-cv-04602, ECF No. 14 ("Defs. Br.")).[1] For the reasons set forth below, the Court dismisses the cases identified in Exhibit A of CMO 64.

**II.    DISCUSSION**

---

[1] In addition, the plaintiffs identified in CMO 64 whose actions are still ongoing, filed individual responses, with the exception of the following: Civil Action Nos. 2:18-cv-14640, 2:18-cv-12329, 2:18-cv-11189, 2:18-cv-14182, 2:19-cv-04452, 2:19-cv-12962, 2:19-cv-20806, 2:18-cv-13198, 2:19-cv-12955, 2:18-cv-17721, 2:18-cv-10446, 2:18-cv-13562, 2:19-cv-00119, 2:19-cv-14413, 2:18-cv-08347, 2:19-cv-17434, and 2:19-cv-09824. Briefing as to CMO No. 64 was complete as of June 8, 2022. *See* CMO No. 67, ECF No. 747; CMO No. 70, ECF No. 769.

1

The relevant facts are not in dispute. The original complaints in the 100 cases identified in Exhibit A to CMO 64 allege "personal injury" from the use of PPIs and were filed in the names of plaintiffs who were in fact deceased at the time the complaints were filed. *See generally* PSC Br. In response to these actions, on November 19, 2021, this Court entered CMO 64, which provides as follows:

> The Special Master has determined that the plaintiffs in the cases listed on the attached Exhibit A appear to have been deceased before the date their complaints asserting claims for personal injury claims relating to the use of PPIs were filed. Plaintiffs' counsel for such cases are hereby ordered to show cause within thirty days of the date of this Order why the cases on the attached Exhibit A should not be dismissed as legal nullities due to the plaintiff's lack of legal existence when the complaints were filed. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. VI)*, 311 F.R.D. 152 (E.D. Pa. 2015); *In re Engle Cases*, No. 3:09-cv-10000-J-32JBT, 2013 U.S. Dist. LEXIS 186429, 2013 WL 8115442, at *2 (M.D. Fla. Jan. 22, 2013); *House v. Mitra QSR KNE LLC*, 796 Fed. Appx. 783; 2019 U.S. App. LEXIS 35864; 2019 WL 6492490 (4th Cir. 2019).

CMO 64. Since CMO 64 was issued, four of the 100 cases have been voluntarily dismissed without prejudice as to all defendants, leaving 96 cases at issue. *See* Civil Action Nos. 2:18-cv-03114, 2:18-cv-04656, 2:19-cv-16930, and 2:20-cv-00516.

As described in CMO 64, the question presented to the Court is whether the cases identified therein are subject to the nullity doctrine—that is, whether they should be dismissed as legal nullities because of the plaintiffs' lack of legal existence when the complaints were filed. While the PSC does not contest the fact that the plaintiffs identified in Exhibit A of CMO 64 lacked legal existence when the complaints were filed, the PSC asserts that the nullity doctrine nevertheless does not apply to these cases. PSC Br. at 8-19. The PSC instead argues that Federal Rule of Civil Procedure 17(a)(3) applies and precludes dismissal by permitting the relevant plaintiffs reasonable time to substitute the representatives of estates of the deceased plaintiffs as new plaintiffs, with appropriate amendments. *Id.* Specifically, as discussed further below, Rule 17(a)(3) states, "the

court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." By contrast, Defendants argue that these cases should be dismissed pursuant to the nullity doctrine because the relevant plaintiffs did not legally exist at the time their complaints were filed. *See, e.g.*, Defs. Br. at 5–18. Defendants further argue that Rule 17 cannot cure the deficiencies in these cases because there is no substitutable party available to pursue plaintiffs' personal injury claims and amendment of the complaint is not possible. *Id.* For the reasons set forth below, the Court will dismiss the remaining 96 cases identified in Exhibit A without prejudice.

The nullity doctrine provides that because "a party must have a legal existence as a prerequisite to having the capacity to sue or be sued" and a "person who dies prior to filing suit is not a legal entity," an action filed solely on behalf of the deceased "is a nullity." *Adelsberger v. U.S.*, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003). Indeed, courts have found "that an action filed in the name of a pre-deceased plaintiff is not viable." *In re Asbestos Products Liability Litigation (No. VI)*, 311 F.R.D. 152, 155-56 (E.D. Pa. 2015) (finding that the named plaintiffs lacked legal existence and dismissing complaints as void *ab initio* and citing cases); *see also, e.g.*, *In re Engle Cases*, 767 F.3d 1082, 1008, 1115 (11th Cir. 2014) (same); *Adelsberger*, 58 Fed. Cl. at 618; *Black Canyon Citizens Coalition, Inc. v. Bd. of County Comm'rs of Montrose County*, 80 P.3d 932, 933-35 (Colo. App. 2003); *Matthews v. Cleveland*, 159 Ga. App. 616, 617, 284 S.E.2d 634, 636 (1981); *Levering v. Riverside Methodist Hosp.*, 2 Ohio App. 3d 157, 159, 441 N.E.2d 290, 291 (Ohio App. 1981); *Gregory v. DiCenzo*, 713 A.2d 772, 775 (R.I. 1998). As elaborated below, relevant case law provides that claims brought in the name of pre-deceased plaintiffs are legal nullities that cannot be remedied.

*In re Asbestos Products* is particularly instructive, as the court rejected an analogous argument to that made by counsel here. There, three complaints alleging injury from exposure to asbestos had been filed in the names of plaintiffs who had died before the complaints were filed. *In re Asbestos Products*, 311 F.R.D. at 153. Amended complaints were subsequently filed, seeking to substitute the personal representatives of the deceased named plaintiffs. Like here, Plaintiffs' counsel in *In re Asbestos Products* argued that Rule 17 prevented that court from dismissing the amended complaints, and that the lack of capacity of the original plaintiffs named in the lawsuits (the decedents) could be remedied under Rule 17. *Id.* The court rejected that reasoning, explaining that "the threshold issue is one of legal existence rather than capacity to sue." *Id.* at 155. The original complaints were held to be *void ab initio* because the deceased plaintiffs in whose names the complaints were filed lacked legal existence at the time the complaints were filed, and thus Rule 17 was irrelevant to the legal existence of the named plaintiffs. *Id.*

As the *In re Asbestos Products* court explained, a plaintiff must have both legal existence *and* capacity to sue to file a case. *Id.* The two concepts are related but distinct. Capacity to sue is a party's right to litigate in federal court. *See, e.g., Garlock Sealing Techs., LLC v. Pittman*, No. 2008-IA-01572-SCT, 2010 Miss. LEXIS 539, 2010 WL 4009151, at *13 (Miss. Oct. 14, 2010) (citing *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Cir. 1991)). Legal existence, on the other hand, is a "prerequisite" to having capacity to sue, and refers to an individual's ability to be a party to a lawsuit. *See Adelsberger,* 58 Fed. Cl. at 618. Legal existence is a jurisdictional issue, whereas capacity to sue is not. *See D&T Partners, LLC v. Baymark Partners, LP*, No. 21-1171, 2022 U.S. Dist. LEXIS 97374, at *5 n.4 (N.D. Tex. Jun. 1, 2022). Notably, a person who is deceased does not have legal existence. *Adelsberger,* 58 Fed. Cl. at 618. Because Rule 17 only speaks in terms of capacity, not legal existence, it does not apply to the situation at issue and thus

4

does not supplant application of the nullity doctrine. That is, "Rule 17 only becomes relevant if the plaintiff has surmounted the pre-requisite of presently existing." *In re Asbestos Products*, 311 F.R.D. at 155 (citations omitted).[2] Here, the relevant cases are null, and thus Rule 17 is not applicable.

The PSC and plaintiffs' counsel who filed individual responses to the show cause order do not refute the fact that the deceased plaintiffs lacked legal existence at the time their complaints were filed. Instead, they urge the Court to set aside the nullity doctrine and rather apply Rule 17(a)(3). *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386 (2d Cir. 2021); *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004). The cases relied upon by the PSC that did not apply the nullity doctrine addressed far different factual circumstances than are present here.[3] *Fund Liquidation Holdings,* for example, concerned two Cayman Island investment

---

[2] Further, a plaintiff that does not legally exist, including a pre-deceased plaintiff, cannot have a "personal stake in the outcome of the controversy" and therefore cannot have Article III standing. *See House v. Mitra QSR KNE LLC*, 796 Fed. App'x 783, 785 (4th Cir. 2019) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Indeed, numerous courts have concluded that a lawsuit in the name of a dead plaintiff cannot satisfy the jurisdictional requirements of Article III because "the dead lack the capacities that litigants must have to allow for a true Article III case or controversy." *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 953 (9th Cir. 2020); *see also Hernandez v. Smith*, 793 F. App'x 261, 265 (5th Cir. 2019) (plaintiff "did not have standing to sue because she was deceased"); *In re 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (same).

[3] Counsel in a few individual cases argued that Louisiana, South Carolina, and Florida law permit relation back in this situation. *See* Civil Action No. 2:18-cv-11721, ECF No. 6 (citing *Nini v. Sanford Brothers, Inc.*, 276 So. 2d 262 (La. 1973) and *Gulf Building Services, Inc., v. Travelers Indemnity Co.*, 365 So. 2d 870 (La. App. 4th Cir. 1978)); *see also* Civil Action No. 2:18-cv-17034 (citing *Thomas v. Grayson*, 456 S.E. 2d 377 (S.C. 1995)); Civil Action No. 2:19-cv-16553 (citing *Friedel v. Edwards*, 327 So. 3d 1242 (Fla. 2d Dist. App. 2021)). However, the cases cited are inapposite. The issue here is whether complaints asserting personal injury legally exist even if the plaintiffs pre-deceased the filing of those complaints. And none of these cases answer that question. *See Friedel*, 327 So. 3d at 1244–1245 (choosing not to address whether a deceased plaintiff could bring a lawsuit because the plaintiff was alive at the time of filing, but also acknowledging that Florida law has provided that "the filing of a civil complaint in the name of a deceased plaintiff should be considered a legal nullity." *See also In re 73 Engle-Related Cases*, 239 So. 3d 166, 168 (Fla. 1st Dist. App. 2018) ("The lawsuits filed here were nullities because a

funds that dissolved and had assigned their claims against the defendant to a separate entity, Fund Liquidation Holdings LLC. *Id.* at 386. A class action lawsuit was subsequently brought in the name of the two dissolved funds, which lawsuit was prosecuted by Fund Liquidation Holdings LLC. The court found that the dissolved funds lacked legal existence but noted that Article III standing could be satisfied "so long as a party with standing to prosecute the *specific claim* in question *exists at the time the pleading is filed.* If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time." *Id.* at 386 (emphasis added). Here, however, the plaintiffs who purported to file the complaints simply did not exist at the time of filing.[4]

The PSC also points to *Esposito*, as support for its position. 368 F.3d at 1271. In that case, counsel for the decedent's widow mistakenly filed a wrongful death claim in the name of the decedent instead of the widow, who was the real party in interest. While substitution of the widow was permitted under Rule 17, the situation in that case -- wrongful death claims being asserted in the original complaint -- is not present in the cases in CMO No. 64. Further, *Esposito*, unlike *Fund*

---

dead person cannot file and maintain a lawsuit.")); *Thomas,* 456 S.E. 2d at 379 (allowing relation back where, unlike here, the initial cause of action was for wrongful death); *Nini*, 276 So. 2d at 264 (presenting a workman compensation claim with a distinguishable factual predicate. In any event, more recent case law notes that "Louisiana law does not allow suits by or against the deceased." *Campbell v. Travelers Ins.*, No. 06-cv-9068, 2008 WL 145048, at *1 (E.D. La. Jan. 14, 2008); *see also James v. Am. Honda Motor Co., Inc.*, No. 18-cv-1316, 2019 WL 2995977, at *4 (W.D. La. July 30, 2019), *report and recommendation adopted,* 2019 WL 3995980 (W.D. La. Aug. 22, 2019)).

[4] Only three of the cases subject to CMO No. 64 have made a specific allegation that a party now purporting to have standing even existed at the time the original complaint was filed. *See* Civil Action Nos. 2:18-cv-11721, 2:18-cv-17034, and 2:18-cv-13535. Although the proposed substitutes note their existence at the time of filing, they do not sufficiently assert standing as to the *specific claims* in the original complaints. *See* Civil Action No. 2:18-cv-11721, ECF Nos. 1 and 6; Civil Action No. 2:18-cv-17034, ECF Nos. 1 and 8; and Civil Action No. 2:18-cv-13535, ECF Nos. 11 and 12. In any event, these cases must be dismissed for the reasons previously discussed. *See supra* at 5 n.3.

6

*Liquidation Holdings*, did not address why the named plaintiff's lack of legal existence could be or should be excused. For that same reason, the Court finds unpersuasive the reasoning in another case cited by the PSC, *Hatcher v. Labrum*. *See* PSC Br. at 8 (citing *Hatcher v. Labrum*, No. 85-4924, U.S. Dist. LEXIS 24169, at *9-10 (E.D. Pa. June 18, 1986)). As the *In re Asbestos Products* court noted in distinguishing *Hatcher*, that case "focus[ed] on capacity to sue rather than the threshold question of legal existence." *In re Asbestos Products*, 311 F.R.D. at 155. Therefore, for the reasons stated above, the Court finds that the plaintiffs identified in CMO 64 do not have "legal existence." Thus, their actions are not viable and must be dismissed. *In re Asbestos Products,* 311 F.R.D. at 155-56.

To the extent that the PSC argues nullity is inapplicable and seeks instead to rely upon Rule 17 to cure deficiencies in the relevant complaints, Rule 17 cannot overcome plaintiffs lack of legal existence. As the court in *In re Asbestos* explained, "these suits are nullities ab initio due to the deceased Plaintiffs' lack of legal existence, thus, Rule 17 never becomes relevant." *Id.* at 155. Further, the court reasoned that "[a]nalyzing the wording of the rule reinforces its inapplicability. Rule 17 describes dismissing an 'action,' however, here, there are no legitimate actions to dismiss." *Id.* (citing Fed. R. Civ. P. 17(a)(3)).

Indeed, the Advisory Committee's comments make clear that while Rule 17 was added "in the interests of justice," "[t]he provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17, Advisory Comm. Notes, 1966 Amend.; *see also In re Engle Cases*, 767 F.3d at 1109. Accordingly, "'most courts have interpreted . . . Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct

party to bring the action is difficult.'" *In re Engle Cases*, 767 F.3d at 1109 (quoting *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001)); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1555, at 571 (3d ed. 2010) ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.") (citing cases). A typical Rule 17 substitution case, therefore, concerns difficulty identifying, for example, the correct business entity name or the common name of an unincorporated association. *See, e.g., Marks L. Offs., LLC v. Mireskandari*, 704 F. App'x 171, 174-75 (3d Cir. 2017) (permitting post-judgment substitution of the correct corporate entity "Marks Law Offices, LLC" as the real party in interest in place of the originally named plaintiff, "Marks & Sokolov, LLC," which was actually a trade name). But that is not the case here, where counsel could have verified whether the plaintiff was alive or deceased before filing suit.[5]

---

[5] Moreover, the Rule 17 Advisory Committee Note contains other language that makes clear that Rule 17 was not intended to create a device for counsel to begin by filing a lawsuit to preserve the limitations period and only then identify a proper plaintiff:

> [Rule 17(a)(3)] does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period.

Fed. R. Civ. P. 17 Advisory Comm. Notes, 1966 Amend; *see also In re Engle Cases*, 767 F.3d at 1113.

Accordingly, the Court finds that, under these circumstances, Rule 17 does not permit plaintiffs' counsel to substitute the representatives of estates of the deceased plaintiffs as new plaintiffs in the instant actions.[6]

### III. CONCLUSION

For the reasons stated above, the Court finds that the complaints in the remaining 96 cases identified in CMO 64 Exhibit A were nullities because the named plaintiffs were deceased at the time of filing. Thus, these cases are dismissed without prejudice. An appropriate Order accompanies this Opinion.

**DATE**: December 22, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

[6] The Court notes that in 12 cases, an attempt was made to amend the complaint or to substitute a new party. However, as discussed above, as these lawsuits were not viable at filing, there is no proper party to be substituted, nor is there a complaint to amend. As such, despite any efforts otherwise, Rule 17 does not apply.