McCarter & English

Gregory J. Hindy
Partner
T. 973-639-6954
F. 973-297-3883
ghindy@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
www.mccarter.com

July 5, 2023

**VIA ECF**

Hon. Claire C. Cecchi, U.S.D.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Bldg. & U.S. Courthouse
Courtroom MLK 5B
50 Walnut Street
Newark, New Jersey 07101

**Re: Proton-Pump Inhibitor Products Liability Litigation (No. II)**
**2:17-md-2789 (CCC)(LDW) (MDL 2789)**

Dear Judge Cecchi:

AstraZeneca respectfully submits this letter in support of its motion to disqualify Dr. Gilbert Moeckel. The recent decision in *M&T Bank v. Worldwide Supply LLC,* No. CV206378MCAMAH, 2022 WL 16743689 (D.N.J. June 28, 2022), Exhibit A, in which the court granted a motion to disqualify the plaintiff's expert despite lack of a signed agreement, the brief nature of the interactions and cursory review of the materials provided, and the expert's failure to recall the communications, is closely on point to the facts of this case and underscores why Moeckel should, in fact, be disqualified.

In *M&T Bank*, the defendants moved to disqualify the plaintiff's expert for alleged side-switching. *See* 2022 WL 16743689 at *1. Defense counsel certified that on September 14, 2021 he had an initial, twenty minute phone conversation with the expert after which he sent an email stating, *inter alia*, "it was a pleasure talking with you about possible engagement as an expert on behalf of the defendants." *Id.* at *2. Defense counsel thereafter sent various requested pleadings and a timeline to the expert, which they discussed on September 21, 2021. *Id.* On April 7, 2022, the plaintiff served the expert's report on defendants, to which they objected. Through the disqualification proceedings, the plaintiff's expert minimized the extent and significance of her communications with defense counsel and produced a September 21, 2021 email advising she was not interested in the potential engagement. *Id.* She maintained that she did not recall communicating with defense counsel or reviewing

the materials. *Id.* The court granted the defendants' motion finding that, notwithstanding the lack of written agreement, cursory nature of the interactions and review of materials provided, and the expert's failure to recall the communications, (1) it was objectively reasonable for the defendants to believe that a confidential relationship existed and (2) that confidential information was disclosed. *See generally id.*

Here, Plaintiffs make similar arguments, rejected by the court in *M&T Bank*, as to why Moeckel should not be disqualified. Yet, the interactions and written communications between AstraZeneca and Moeckel even more strongly support the existence of a confidential relationship, in which confidential information was disclosed, than was present in *M&T Bank*. Here, in late 2016, Moeckel executed an agreement he himself entitled "Consulting Agreement," to which counsel affirmatively confirmed a meeting of the minds establishing a contractual relationship. *See e.g. Nelson v. AstraZeneca et al.*, No. 2:17-cv-13727, Doc. 34 at 4. In 2017, counsel flew to Moeckel's office for a two-hour long in-person meeting during which counsel engaged in privileged and confidential communications with Moeckel and shared attorney work product, including insights on plaintiffs' theories of liability, the parties' respective litigation positions, and the identity of other experts. *Id.* at 5 – 6. At Moeckel's request, AstraZeneca then shared two binders of materials that represented Defendants' strategic thinking as to key literature. *Id.* at 6. *M&T Bank* confirms that Plaintiff's arguments are red herrings:

<u>Written Agreement</u>: Moeckel provided an executed agreement he himself entitled "Consulting Agreement," which Defendants confirmed via email. Regardless, courts have held that a confidential relationship may exist without a formal contractual relationship. In *M&T Bank*, the court stated "The Court disagrees with Plaintiff. Defendants are not required to produce a formal, written confidentiality agreement or retainer agreement to prevail." *M&T Bank*, 2022 WL 16743689 at *3. (citing *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 581 (D.N.J. 1994) (recognizing "[n]o case in New Jersey has held tha[t] an attorney must go through [such] formalistic rituals")).

<u>Passage of Time</u>: In finding that the defendants had satisfied their burden with respect to the first-prong of the relevant two-part inquiry, the *M&T Bank* court confirmed that the objectively reasonable belief standard is not a high hurdle to clear and reiterated that "'the first step *does not include any 'ongoing' element*, but merely requires a finding that the moving party held an objectively reasonable belief as to the existence

of a confidential relationship with the proposed expert.'" *M&T Bank*, 2022 WL 16743689 at *3 (emphasis added) (citing *Orion Corp. v. Sun Pharm. Indust., Ltd.*, No. CIV.A. 07-5436(MLC), 2009 WL 5872982, at *1. (D.N.J. June 12, 2009)).

Moreover, at the time of Defendants' introductory meeting with Moeckel, the MDL had not even been created. This MDL was established in August 2017 and the remainder of that year and 2018 was spent meeting and conferring upon initial case management orders. Tolling negotiations, intake of thousands of plaintiffs, and subsequent briefing consumed 2018 and most of 2019. The Bellwether I discovery pool was not chosen until March 2020, when Covid-19 began shutting down the nation. In addition to negotiating a CMO regarding failure to produce a PFS and the appointment of Special Master Reisman, 2020 was largely focused on Bellwether I plaintiff-specific discovery and negotiating remote deposition orders. Bellwether core discovery did not close until November 2020 and the six Bellwether trial cases were not identified until February 2021. Thus, it was entirely appropriate for Defendants to wait until November 2020 to take the next step with respect to Moeckel, and nothing occurred in the interim to erode AstraZeneca's understanding of the existing agreement and confidential relationship with him.

Lack of Fee Paid: The expert disqualified in *M&T Bank* apparently also was not paid for her interactions with defense counsel – the decision does not reference any fees. Regardless, failure to pay an expert does not factor into the relevant two-part test. Here, given the early litigation stages, Defendants did not expect an invoice from Moeckel until later in the process. Courts have held that a confidential relationship may certainly exist in the absence of payment. *See e.g. Excel Jet, Ltd. v. United States,* No. 08-CV-01218-WYD-BNB, 2009 WL 1194936, *7 (D. Colo. May 1, 2009) (finding confidential relationship even though there was "no evidence . . . that Dr. Greene was paid a fee, entered into a written engagement agreement, or billed any time . . .").

Lack of Memory: It is unclear whether Moeckel recalls his previous engagement by defense counsel[1]; However, courts, including *M&T Bank*, have held that an expert's failure to recall communications with one side does not eradicate that side's

[1] During oral argument in April 2022, Mr. Pennock stated: "And there was – as I understand it, [Moeckel] did say [that] the other side reached to him a couple of years earlier . . ." Exhibit B (4/04/2022 Trans. at 39:21-23.)

objectively reasonable belief that a confidential relationship existed. "Although [the expert] does not recall the content of her conversations with [defense counsel], [defense counsel] certifies that they discussed sensitive, confidential matters." *M&T Bank*, 2022 WL 16743689, at *4 ("measured against the documents produced by [d]efendants, [the expert]'s attestations that she does not recall reviewing [d]efendants' materials and does not believe she received confidential information are unpersuasive").

Prejudice: Plaintiffs suggest Moeckel's disqualification will prejudice them. However, as held by *M&T Bank*, cries of prejudice cannot save an expert from disqualification where, as here, disqualification is required "to maintain the integrity of the judicial process." *M&T Bank*, 2022 WL 16743689, at *5.

*M&T Bank* confirms that AstraZeneca's motion to disqualify should be granted. Similar to *M&T Bank*, defense counsel and Moeckel engaged in confidential discussions regarding AstraZeneca's medical and scientific theories of the case, as well as other potential experts. *M&T Bank*, 2022 WL 16743689 at *4. Notably, such discussions were not confined to a 20-minute phone call, deemed sufficient in *M&T Bank*, but included a 2-hour in-person meeting. As in *M&T Bank*, the expert "requested and received confidential information from Defendants," *id*. at *3, in this case two binders of selected scientific literature. And, unlike the expert in *M&T Bank*, Moeckel did not object to counsel's conspicuous reference confirming a relationship – a cover letter stating "Thank you for agreeing to work with us in the Nexium Kidney Litigation." Indeed, AstraZeneca's statement to Moeckel was far more definitive than the letter sent to the expert in *M&T Bank*, which only referenced a "possible engagement" and which the expert maintained she had rejected. *Id*. at *2. That confidential information was shared with Moeckel cannot be disputed based on the Decl. of K. Althoff, and is not seriously disputed by Plaintiffs, whose witness instead states he does not recall the contents of the discussion with counsel and did not review the documents he received. *Id*. at *4 ("Confidential information includes, but is not limited to, discussion of the retaining party's strategies in the litigation, the kinds of expert the party expected to retain, the party's views of the strengths and weaknesses of each side, the role of each of the party's witnesses to be hired, and anticipated defenses.") (internal quotations and parentheticals omitted).

AstraZeneca meets both prongs of the relevant two-part test for disqualification: (1) it had an objectively reasonable belief that it had established a confidential relationship

with Moeckel and (2) it disclosed confidential information to Moeckel. The Court should grant AstraZeneca's motion.

Respectfully Submitted,
**MCCARTER & ENGLISH, LLP**
***/s/ Gregory J. Hindy***
Gregory J. Hindy
Four Gateway Center. 100 Mulberry Street
Newark, New Jersey 07101-0652
ghindy@mccarter.com

***/s/ James J. Freebery***
James J. Freebery, Makenzie Windfelder
405 N. King Street, 8th Floor
Wilmington, DE 19801
jfreebery@mccarter.com, mwindfelder@mccarter.com

***/s/ Amy K. Fisher***
Amy K. Fisher, Katherine D. Althoff, Kimberly C. Metzger
880 West Monon Green Blvd., Suite 101
Camel, Indiana 46032
afisher@mccarter.com, kalthoff@mccarter.com
kmetzger@mccarter.com

***Attorney for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP and Merck Sharp & Dohme Corporation***

**ARNOLD & PORTER KAYE SCHOLER LLP**
***/s/ Arthur E. Brown***
Arthur E. Brown
250 W. 55th Street, New York, NY 10019-9710
Arthur.Brown@arnoldporter.com

***Attorney for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP***

# EXHIBIT A

2022 WL 16743689
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

M&T BANK, Plaintiff,
v.
WORLDWIDE SUPPLY LLC, et al., Defendants.

Civil Action No. 20-6378 (MCA) (MAH)
|
Signed June 28, 2022

**Attorneys and Law Firms**

David V. Fontana, Gebhardt & Smith LLP, Baltimore, MD, for Plaintiff.

Kenneth L. Moskowitz, Steven Robert Rowland, Brown Moskowitz & Kallen, P.C., Chatham, NJ, for Defendants.

**OPINION**

Michael A. Hammer, UNITED STATES MAGISTRATE JUDGE

## I. BACKGROUND

***1** This matter comes before the Court by way of Defendants Worldwide Supply LLC, Worldwide Supply SA LLC, James P. Smith, Jr., and Gerald Van Orden's (collectively "Defendants") informal application to disqualify Plaintiff M&T Bank's ("Plaintiff") designated banking expert, Nancy D. Terrill CTP. Exhibit A to Parties' Joint Submission in Resp. to D.E. 72, May 13, 2022, D.E. 74, at pp. 3-12 ("Defs.' Position Statement").[1] Plaintiff opposes Defendants' request. Exhibit B to Parties' Joint Submission in Resp. to D.E. 72, May 13, 2022, D.E. 74, at pp. 13-21 ("Pl.'s Position Statement"). The Court has reviewed the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, has considered Defendants' application without oral argument. For the reasons set forth below, Defendants' request to disqualify Terrill is **GRANTED.**

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff is a banking entity that is "organized and incorporated under the laws of the State of New York." Compl., May 27, 2020, D.E. 1, at ¶ 3. Defendant Worldwide Supply LLC is a New Jersey limited liability company. *Id.* at ¶ 4. Its business consists of the maintenance, repair, purchase, and resale of electronic equipment. *Id.*; Counterclaim, July 7, 2020, D.E. 10, at ¶¶ 2-3. Defendants Smith and Van Orden are the sole members of Worldwide Supply LLC and Worldwide Supply SA, LLC. Compl., D.E. 1, at ¶¶ 4-5; Answer, July 7, 2020, D.E. 10, at ¶¶ 4-5.

Plaintiff extended a $5,000,000 commercial line of credit to Worldwide Supply LLC. Compl., D.E. 1, at ¶ 9. Defendants Worldwide Supply SA, LLC, Smith, and Van Orden jointly and severally guaranteed the loan. *Id.* at ¶¶ 8, 24. After a dispute concerning Worldwide Supply LLC's compliance with the terms of the line of credit's note and credit agreement, Plaintiff initiated this matter by filing a Complaint against Defendants on May 27, 2020. *Id.* at ¶¶ 29-42. Plaintiff raises four breach of contract claims against Defendants: against Worldwide Supply LLC for breach of the line of credit note and credit agreement (Count I), and against Worldwide Supply SA (Count II), Smith (Count III), and Van Orden (Count IV) for breach of their respective guarantees. *Id.* at ¶¶ 43-93. On July 7, 2020, Defendants filed an Answer raising several affirmative defenses and two counterclaims: (1) violation of the covenant of good faith and fair dealing and (2) release of guaranty. Answer, D.E. 10.

Defendants' counterclaim for release of guaranty was dismissed as duplicative of the Complaint on February 17, 2021. Order, Feb. 17, 2021, D.E. 28, at p. 7. Nearly a year later, in January 2022, Plaintiff retained Nancy D. Terrill as a banking liability expert. Defs.' Position Statement, D.E. 74, at p. 6; Affidavit of Nancy Terrill, May 3, 2022, D.E. 78-1, at ¶¶ 4, 11 ("Terrill Affidavit"). Plaintiff served a copy of Terrill's expert report on Defendants on April 7, 2022. Defs.' Position Statement, D.E. 74, at p. 6; Terrill Affidavit, D.E. 78-1, at ¶¶ 4, 11. That same day, defense counsel emailed Plaintiff's counsel "to advise of the [Defendants'] prior privileged communications with Terrill and to object to her appearance as an expert for [Plaintiff]." Defs.' Position Statement, D.E. 74, at p. 6.

***2** Defendants raised the issue during a telephone status conference before the Undersigned. Order, Apr. 7, 2022, D.E. 69. The Court directed the parties to meet and confer in an attempt to resolve the dispute. *Id.* On May 13, 2022, after meet-and-confer efforts proved unsuccessful, Defendants informally moved to disqualify Terrill as Plaintiff's expert in a joint letter. Defs.' Position Statement, D.E. 74, at p. 4. Plaintiff

opposed Defendants' application. Pl.'s Position Statement, D.E. 74, at p. 14.

At the Court's direction, the parties submitted documents supporting their respective positions under seal. Order, May 31, 2022, D.E. 75; *see, e.g.*, Terrill Affidavit, D.E. 78-1. Defendants' attorney, Steven R. Rowland, Esq., submitted a certification and exhibits in support of Defendants' application. Certification of Steven R. Rowland, Esq., June 3, 2022, D.E. 79 ("Rowland Certification"). As part of its opposition, Plaintiff submitted an affidavit from Terrill. Terrill Affidavit, D.E. 78-1. The Court addresses each of these submissions in turn, beginning with Defendants' position and supplemental submissions.

Rowland certifies that he identified Terrill as a potential expert witness in September 2021. Rowland Certification, D.E. 79, at ¶ 3. Rowland and Terrill had an initial phone conversation on September 14, 2021. During that call, Terrill asked Rowland for copies of the pleadings and "a confidential timeline/summary document prepared by [Defendants]." *Id.* at ¶ 7. Rowland states that "[g]iven Terrill's request for confidential materials to evaluate the Worldwide Parties' defenses and counterclaims, I understood that she had accepted and agreed that, as set forth in my covering emails, our communications were privileged and confidential, and that the client-prepared timeline/summary document was an attorney-client, privileged communication." *Id.* Indeed, Rowland's same-day email to Terrill included the subject line "M&T Bank v. Worldwide Supply LLC – key papers ATTORNEY WORK PRODUCT – PRIVILEGED AND CONFIDENTIAL," and banner "ATTORNEY WORK PRODUCT – PRIVILEGED AND CONFIDENTIAL." Exhibit B to Rowland Certification, D.E. 79, at p. 12. In that correspondence, Rowland wrote:

> Nancy:
>
> It was a pleasure talking with you about possible engagement as an expert on behalf of the defendants in the above matter.
>
> Per our conversation, I am sending you some key documents from our clients' suit here in the District of New Jersey, and ask that after that review, please advise me when you would like to speak further.
>
> Per your request, I will also forward a time-line that our client prepared. (We are in the process of preparing key documents binders, but that won't be available for a few weeks.)
>
> Thanks!

*Id.* Rowland attached copies of the pleadings to his September 14, 2021 email. Rowland Certification, D.E. 79, at ¶ 7. He emailed Terrill for a second time the next day, on September 15, 2021. Exhibit B to Rowland Certification, D.E. 79, at p. 11. That email contained the same subject line and banner as Rowland's September 14, 2021 email. It stated, "Nancy: Per your request, here is the 'timeline.' " *Id.* Rowland certifies that he attached the "client-prepared" timeline/summary document to his September 15, 2021 email. Rowland Certification, D.E. 79, at ¶ 7. He and Terrill then "discussed in detail the relevant facts and the Worldwide Parties' theory of the case, including those set forth in [Defendants'] timeline/summary," during a September 21, 2021 call. *Id.*

Terrill minimizes the extent and significance of her communications with Rowland. She does not dispute that she communicated with Rowland over the phone on September 14, 2021 for approximately twenty minutes. Terrill Affidavit, D.E. 78-1, at ¶ 13. But she emphasizes that her records document only "one brief telephone conversation and an exchange of emails with Mr. Rowland." *Id.* at ¶ 15. Apart from her phone records, Terrill possesses a September 21, 2021 email she sent in response to the September 14, 2021 email from Rowland, in which she advised that she was not interested in the potential engagement.[2] *Id.* at ¶ 14. Terrill was unable to locate Rowland's September 14, 2021 email or any other correspondence from defense counsel. *Id.* She nevertheless maintains that she has "no specific recollection of communicating with Mr. Rowland," or reviewing materials – confidential or otherwise – from defense counsel. *Id.* at ¶¶ 13, 19-22, 25. Moreover, she maintains that if she had reviewed Defendants' materials, "[her] review would have been brief and cursory as [she] had not agreed to any engagement." *Id.* at ¶ 19. Terrill contends, based on her own investigation, that she "received an unsolicited, preliminary inquiry on September 14, 2021 ... that [she] promptly declined on September 21, 2021." *Id.* at ¶ 15.

### III. DISCUSSION

***3** The Court has the inherent power to disqualify experts. *U.S. ex. rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 245 (D.N.J.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

1997). This power is derived from the Court's "duty to preserve confidence in the fairness and integrity of judicial proceedings, and to protect privileges which may be breached if an expert is permitted to switch sides in pending litigation." *Id.* at 248-49; *accord* *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 579 (D.N.J. 1994). Where, as here, a party moves to disqualify an opponent's expert on the basis that it had a prior confidential relationship with that same expert, the Court undertakes a two-part inquiry to determine whether the expert should be disqualified. *Cordy*, 156 F.R.D. at 580. The Court first must ask whether "it was objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed[.]" *Id.* (citing *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 279 (S.D. Ohio 1998)). The Court then must consider whether the moving party disclosed any confidential information to the expert at issue. *Id.* Defendants, as the parties seeking disqualification, "bear[ ] the burden of establishing both the existence of confidentiality and its nonwaiver." *Cherry Hill Convalescent*, 944 F. Supp. at 249 (citing *Cordy*, 156 F.R.D. at 580).

**A. Confidential Relationship**

The Court first considers whether Defendants' belief that a confidential relationship existed between themselves and Terrill is objectively reasonable. Several factual circumstances may support the existence of a confidential relationship, including but not limited to: "(1) express confidentiality agreements; (2) employment contracts; and (3) professional duties of confidentiality." *Chiesi USA, Inc. v. Sandoz Inc.*, Civ. No. 13-5723, 2015 WL 13932698, at *5 (D.N.J. Mar. 31, 2015) (quoting *Novartis AG v. Apotex Inc.*, Civ. No. 09-5614, 2011 WL 691594, at *3 (D.N.J. Jan. 24, 2011)). Courts have also considered: (4) whether the movant and expert's relationship "was one of long standing and involved frequent contacts," rather than a single interaction; (5) "whether the expert is to be called as a witness in the underlying case;" (6) "whether alleged confidential communications were from expert to party or vice-versa;" and (7) "whether the moving party funded or directed the formation of the opinion to be offered at trial." *Id.* at *6 (quoting *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004)).

Defendants argue they reasonably believed a confidential relationship existed between themselves and Terrill because Terrill requested and received confidential information from Defendants. Defs.' Position Statement, D.E. 74, at pp. 9-10, 12. Defendants also assert that Terrill implicitly agreed to maintain the confidentiality asserted in counsel's communications by raising no objections. *Id.* at p. 10. Plaintiff's arguments in opposition heavily rely upon Terrill's contentions that she had only one phone call with defense counsel, and that she does not specifically recall the substance of their communications. *See* Pl.'s Position Statement, D.E. 74, at pp. 19-20; Terrill Affidavit, D.E. 78-1, at ¶¶ 13-15, 19-21, 25. Plaintiff first contends that "[i]t was not objectively reasonable for Mr. Rowland to believe that a confidential relationship had been established between himself and Ms. Terrill based upon his one brief telephone call with her." Pl.'s Position Statement, D.E. 74, at p. 19. Plaintiff also opines that "[t]here is no evidence that Ms. Terrill consented to the creation of a confidential relationship ... or agreed to treat any information that Mr. Rowland unilaterally chose to provide to her as confidential." *Id.* at p. 20.

The Court disagrees with Plaintiff. Defendants are not required to produce a formal, written confidentiality agreement or retainer agreement to prevail. *See* *Cordy*, 156 F.R.D. at 581 (recognizing "[n]o case in New Jersey has held tha[t] an attorney must go through [such] formalistic rituals"). "The 'objectively reasonable belief' standard is not a high hurdle to clear." *AstraZeneca Pharms., LP v. Teva Pharms. USA, Inc.*, Civ. No. 05-5333, 2007 WL 4292384, at *2 (D.N.J. Dec. 4, 2007). "[T]he first step does not include any 'ongoing' element, but merely requires a finding that the moving party held an objectively reasonable belief as to the existence of a confidential relationship with the proposed expert." *Orion Corp. v. Sun Pharm. Indus., Ltd.*, Civ. No. 07-5436, 2009 WL 5872982, at *1 (D.N.J. June 12, 2009).

***4** The Court finds Defendants have satisfied their burden with respect to the first prong. Rowland, Defendants' attorney, contacted Terrill with the purpose of engaging Terrill as an expert witness in this litigation. Rowland Certification, D.E. 79, at ¶ 3; Terrill Affidavit, D.E. 78-1, at ¶¶ 13, 15. Although Terrill does not recall the content of her conversations with Rowland, Rowland certifies that they discussed sensitive, confidential matters. Rowland Certification, D.E. 79, at ¶¶ 7-8; Terrill Affidavit, D.E. 78-1, at ¶¶ 13, 18-19. Specifically, those discussions included Defendants' theory of the case, and counsel's own perceptions. Rowland Certification, D.E. 79, at ¶¶ 7-8.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

Rowland's assertion finds support in the document that Defendants provided to Terrill at her request, specifically the "timeline/summary" containing Defendants' assessments of their counterclaim and defenses. Rowland Certification, D.E. 79, at ¶ 9; *see* Exhibit B to Rowland Certification, D.E. 79, at pp. 14-15. Rowland explicitly stated to Terrill the document was one "our client prepared." Exhibit B to Rowland Certification, D.E. 79, at p. 12. Further, Terrill did not object to Rowland's statement that Defendants' summary and other documents were produced "Per [Terrill's] request." *Id.* Nor did she object to counsel's conspicuous designation of each email as "ATTORNEY WORK PRODUCT – PRIVILEGED AND CONFIDENTIAL." *See id.* The Court finds, under these circumstances, that Defendants had an objectively reasonable basis for their belief that a confidential relationship existed between themselves and Terrill.

**B. Confidential Information**

The Court next considers whether Defendants disclosed confidential information to Terrill. "In the context of expert disqualification, disclosure of 'confidential information' encompasses facts and ideas directly relating to or impacting the litigation in issue." *AstraZeneca Pharms.*, 2007 WL 4292384, at *3. Confidential information includes, but is not limited to, "discussion of the [retaining party's] strategies in the litigation, the kinds of expert [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Cherry Hill Convalescent*, 994 F. Supp. at 250 (alterations in original) (quoting *Koch Refining Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178, 1182 (5th Cir. 1996)). Here, as already noted, Defendants contend that they submitted a confidential timeline/summary at Terrill's instruction, which Rowland delivered via email. Rowland Certification, D.E. 79, at ¶ 9; Exhibit B to Rowland Certification, D.E. 79, at pp. 14-15. The Court's review of that document establishes that it is confidential. The timeline/summary bears several of the hallmarks of being privileged. It is a two-page, single-spaced communication containing Defendants' mental impressions of the Complaint and counterclaim, Defendants' anticipated defenses, and references to Defendants' litigation strategy. Exhibit B to Rowland certification, D.E. 79, at pp. 14-15. Measured against the documents produced by Defendants, Terrill's attestations that she does not recall reviewing Defendants' materials and does not believe she received confidential information are unpersuasive. Terrill Affidavit, D.E. 78-1, at ¶¶ 20-21. *See, e.g.*, *AstraZeneca Pharms.*, 2007 WL 4292384, at *4 (rejecting challenged expert's "comprehension of 'confidential' as a legal term"). Neither of these assertions change the fact that Terrill received a confidential document from Defendants. Nor do they rebut Rowland's contentions that he verbally discussed counsel's impressions and litigation strategy with Terrill. Those communications, too, are confidential. *See* *Cherry Hill Convalescent*, 994 F. Supp. at 250.

**C. Policy Considerations**

The Court having concluded that Defendants reasonably believed that a confidential relationship existed between themselves and Terrill, and that Defendants disclosed confidential information to Terrill, the Court must now "balance the competing policy objectives in determining expert disqualification." *Cordy*, 156 F.R.D. at 580. "The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. The main policy objectives militating against disqualification are ensuring access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *Id.* (citing *Eng. Feedlot, Inc. v. Norden Lab'ys, Inc.*, 833 F. Supp. 1498, 1505 (D. Colo. 1993)); *accord* *Cherry Hill Convalescent*, 994 F. Supp. at 251; *Howmedica Osteonics Corp. v. Zimmer, Inc.*, Civ. No. 05-0897, 2007 WL 4440173, at *2 (D.N.J. Dec. 17, 2007). "In balancing these concerns, courts have [also] considered whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert." *Cherry Hill Convalescent*, 994 F. Supp. at 251 (citations omitted).

***5** Plaintiff contends that it will be severely prejudiced if Terrill is disqualified at this juncture. Pl.'s Position Statement, D.E. 74, at p. 19. Plaintiff explains that Terrill's expert report has been served, and it has paid Terrill approximately $50,000 for more than 150 hours of work. *Id.* at p. 15. The Court understands Plaintiff's position. That said, the Court is constrained to conclude that public policy weighs in favor of Terrill's disqualification. Although Terrill has attested that she does not recall the substance of her communications with Rowland, and did not rely upon Defendants' materials in drafting her expert report, a conflict of interest exists. Terrill

Affidavit, D.E. 78-1, at ¶¶ 19-21, 25. Allowing Terrill to continue serving as Plaintiff's banking liability expert would undermine the Court's obligation to maintain the integrity of the judicial process. *See* *Cordy*, 156 F.R.D. at 582. The Court also finds that although Plaintiff might incur further financial expense in retaining a substitute expert, Plaintiff has given the Court no basis from which to conclude Plaintiff will be unduly burdened. Plaintiff has not asserted, for example, that it lacks the necessary resources, or that Terrill "possess[es] useful specialized knowledge" that will be difficult to replace. *See* *Cherry Hill Convalescent*, 994 F. Supp. at 252. The Court is also prepared to extend the existing deadlines to complete expert discovery to accommodate Plaintiff and minimize any resultant prejudice. The Court therefore holds that the relevant public policy considerations support Terrill's disqualification.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' informal application to disqualify Nancy D. Terrill from serving as an expert for Plaintiff is **granted.**

**All Citations**

Slip Copy, 2022 WL 16743689

## Footnotes

1 All citations to exhibit page numbers in this Opinion refer to the electronic case filing ("ECF") page number at the top of each document.

2 Plaintiff did not submit a copy of the phone records and emails referenced in Terrill's affidavit.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

______________________________

IN RE: PROTON-PUMP 2:17-MD-2789(CCC)(MF)
INHIBITOR PRODUCTS (MDL 2789)
LIABILITY LITIGATION

Judge Claire C. Cecchi

This Document Relates to:
All Actions

______________________________

\- - -

REMOTE HEARING

BEFORE SPECIAL MASTER ELLEN REISMAN

Monday, April 4, 2022

\- - -

This is the Remote Hearing In Re: Proton-Pump Inhibitor Products Liability Litigation, commencing at 10:00 a.m., Monday, April 4, 2022, before Juliana F. Zajicek, Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter.

\- - -

THE SPECIAL MASTER: All right. So let's go on the record. And so what we are doing today is oral argument on the various Daubert motions and on our defense motions for summary judgment. And a couple of things I just wanted to say upfront.

I looked at the outline that we did, the procedures outline, and I think we left out the Mann -- Mann's name on -- on the oral argument on plaintiffs' omnibus motion to exclude experts. I think it should have been on there.

I also noted that it looks to me like we are having argument on four plaintiff experts and five defense experts and I -- you know, the timeframes are a little bit longer as to the plaintiffs' experts, shorter as to the defense experts. I'm obviously, you know, if need be will allow people to have some additional time, although I'm really hoping that we don't end up using all of the time. I think, as I was sitting down and calculating this this morning, it is a lot of time, and believe it or not I have actually read all of this stuff. There are many large notebooks strewn around this room, and because I -- I have to read things in hard copy. So we killed a lot of trees here.

Still up. There we go. Okay.

All right. Go ahead, Paul.

MR. PENNOCK: Thank you.

First, I probably -- I probably should say and remind the Special Master, at least, as you saw in the papers that we -- I did not know that this contact had taken place, so -- in terms of her -- in terms of her going to meet in Connecticut or anything of that type. I never had, therefore, any conversations with them about those discussions, neither did Bess DeVaughn or Tracy Finken who had been working with him. We knew that a reach out had occurred years earlier and that's it and we didn't question him about it.

THE SPECIAL MASTER: When did you start meeting with him, Paul? When did your team start meeting with him and did you ask him about, you know, whether he had been contacted by any other party?

MR. PENNOCK: So it was in November of 2018 that we first started having contact with him. I was not a part of that at that time. And there was -- as I understand it, he did say the other side reached out to him a couple of years earlier and that's the extent of it from what we knew.

over to my e-mail.

THE SPECIAL MASTER: Juliana, or whoever is on from Golkow, what's the process for that?

THE COURT REPORTER: I will shoot an e-mail over to him.

MR. BROWN: Thanks, Juliana.

THE SPECIAL MASTER: I'll forward -- maybe we can forward it around to everybody who wants it.

Okay. All right. Thanks everybody, very good. See you tomorrow.

---

Thereupon, at 3:33 p.m., on Monday, April 4, 2022, the hearing was adjourned.

---

CERTIFICATE OF OFFICER

I, JULIANA F. ZAJICEK, a Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter, do hereby certify that I reported in shorthand the proceedings had at the remote hearing aforesaid, and that the foregoing is a true, complete and correct transcript of the proceedings of said hearing as appears from my stenographic notes so taken and transcribed under my personal direction to the best of my ability.

IN WITNESS WHEREOF, I do hereunto set my hand on this 8th day of April, 2022.

JULIANA F. ZAJICEK, Certified Reporter